## Commonwealth of Pennsylvania *v.* Philadelphia Gas Works, Appellant.

Argued March 2, 1976, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers and Blatt. Judge Kramer did not participate.

*Leonard B. Rosenthal,* with him *Abrahams & Lowenstein,* for appellant.

*Vincent J. Dopko,* Deputy Attorney General, with him *Donald J. Murphy,* Deputy Attorney General, for appellee.

OPINION BY JUDGE MENCER, June 3, 1976:

This case involves five appeals brought by the Philadelphia Gas Works (appellant) from a decision rendered by the Board of Finance and Revenue (Board) on May 30, 1974, granting in part and denying in part appellant's claim for a refund of taxes paid under The Liquid Fuels Tax Act [1] (Tax Act). Originally, a single appeal was taken from the Board's decision on four separate refund requests. An appeal from each separate request was subsequently taken as a precautionary measure. Because these appeals involve identical issues, they were consolidated for argument and decision.

Appeals taken pursuant to Section 1104 of The Fiscal Code [2] are heard de novo. As is often the case, the parties here have submitted a stipulation of facts which we adopt as our findings for the purpose of this case and some of which we will refer to in the course of this opinion.

Between January 1, 1962 and December 31, 1972, appellant was operated and managed by the United Gas Improvement Company (UGI), a private corporation, in accordance with an agreement with the City of Philadelphia. On December 29, 1972, pursuant to

---

[1] Act of May 21, 1931, P.L. 149, *as amended,* 72 P.S. §2611a et seq.

[2] Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §1104.

an ordinance of Philadelphia City Council, the City entered into an agreement for the management and operation of appellant with Philadelphia Facilities Management Corporation (PFMC), a nonprofit corporation created especially for that purpose. The new agreement became effective January 1, 1973.

On April 1, 1970, an amendment to the Tax Act[3] became effective which, among other things, exempted political subdivisions of the Commonwealth from the payment of the tax. Appellant claimed, before the Board, to be entitled to refunds with interest for all liquid fuels taxes paid after that date. The claim was made under Section 17 of the Tax Act, 72 P.S. §2611q, which provides in part: "The Board of Finance and Revenue may refund to distributors taxes, penalties, and interest paid by them on liquid fuels delivered to the United States government, or paid as the result of an error of law or of fact or of both law and fact. Claims for such refunds shall be made under the procedure prescribed by The Fiscal Code." Appellants assert that they have paid the tax under a mistake of both law and fact.

The Board granted refunds, without interest, for all liquid fuels taxes paid by appellant since January 1, 1973, on which date management of appellant by PFMC began. The Board denied refunds for taxes paid between April 1, 1970 and January 1, 1973 on the ground that appellant was not, before January 1, 1973, a political subdivision entitled to an exemption under Section 4 of the Tax Act, 72 P.S. §2611d, which reads in part: "A permanent State tax of eight cents a gallon, or fractional part thereof, is hereby imposed and assessed upon all liquid fuels used or sold and delivered by distributors within this Commonwealth, . . . *excepting liquid fuels delivered to the Common-*

---

[3] Act of March 3, 1970, P.L. 109.

*wealth [and] every political subdivision. . . ."* (Emphasis added.)

Appellant raises two major objections to this decision. First, appellant contends that it was, at all times subsequent to April 1, 1970, entitled to an exemption as a political subdivision.[4] Second, appellant contends that it should be allowed to recover interest on the refunds to which it is entitled. We find both contentions to be without merit and therefore dismiss the appeal.

Taxpayers claiming exemptions from a tax must bear the burden of proving that they come within the exempted class. We have examined the stipulations before us, as well as the management contracts between the City and UGI and PFMC respectively, and find them insufficient to carry the burden of proof that appellant could in any way be considered a political subdivision during the period in question.

We begin with the proposition that words used in a statute are not lightly to be given a meaning other than their normal one. *Treaster v. Union Township,* 430 Pa. 223, 242 A.2d 252 (1968). This is especially true of provisions exempting persons and property from taxation. According to the Statutory Construction Act of 1972, 1 Pa. C.S. §1928(b)(5), such provisions are to be strictly construed. *See also Wanamaker v. Philadelphia School District,* 441 Pa. 567, 274 A.2d 524 (1971). A political subdivision is defined as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district." 1 Pa. C.S. §1991. Clearly, the appellant, which consists only of a collection of real and personal property, cannot qualify for the exemption as a political subdivision.

---

[4] By letter dated August 23, 1973, the Department of Revenue granted the appellant's request for an exemption as a political subdivision, effective January 1, 1973. This ruling has not been appealed by the Commonwealth and is not before us.

In *Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971), the Pennsylvania Supreme Court, although upholding the Authority's exemption from the liquid fuels tax on other grounds,[5] specifically rejected the Authority's argument that it was a political subdivision. Applying the rules of statutory construction as they were applied in *Erie,* we hold that appellant is not a political subdivision, nothwithstanding the fact that it is composed of public property used for a public purpose.

We next turn to the question of appellant's entitlement to interest on the refunds it has already obtained. Appellant relies heavily on *Cities Service Oil Company v. Pittsburgh,* 449 Pa. 481, 297 A.2d 466 (1972), for the proposition that interest may be awarded on claims for refunds of taxes. We find *Cities Service* inapposite for two reasons. First, in *Cities Service* the taxing authority was a municipality and not the sovereign as in this case. The instant case is controlled by the holding in *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972), that the sovereign is not liable for interest unless a statute or contract, reasonably construed, provides for liability. In this case, we do not find statutory language which would allow such a construction. Secondly, in *Cities Service* the tax at issue was paid under protest and not voluntarily as in this case. This fact leads us to believe that, even if interest were properly payable, which it is not, the date on which interest would begin to run is the date of the Board's decision, not the date of payment. 449 Pa. at 486, 297 A.2d at 469. Therefore, the amount of interest accrued would, at best, be zero.

Finally, appellant, in its brief, asks us to find a regulation, dated September 18, 1970, 1 Pa. B. 278, in-

---

[5] The Court found an exemption on the ground that the Authority, a creature of the General Assembly, was cloaked with the *Commonwealth's* exemption.

valid because it allegedly conflicts with Section 503 of The Fiscal Code, 72 P.S. §503. This we must decline to do since the issue was not raised in the specification of objections, nor will it affect, in any way, the result in this case.[6]

## CONCLUSIONS OF LAW

1. For the period April 1, 1970 to December 31, 1972, Philadelphia Gas Works was not entitled to an exemption from the liquid fuels tax as a political subdivision under Section 4 of The Liquid Fuels Tax Act, 72 P.S. §2611d.

2. Appellant is not entitled to interest on refunds recovered under Section 17 of The Liquid Fuels Tax Act, 72 P.S. §2611q, for taxes paid after January 1, 1973.

## DECREE NISI

Now, this 3rd day of June, 1976, the appeals from the orders of the Board of Finance and Revenue denying refunds of liquid fuels taxes paid by Philadelphia Gas Works are hereby dismissed, and it is directed that the Commonwealth of Pennsylvania shall refund, unless it has previously made payment as provided herein, to the Philadelphia Gas Works the sum of $37,301.76 relative to the proceeding docketed at M-607; the sum of $4,569.84 relative to the proceeding docketed at M-608; the sum of $10,584.96, less filing fee of $1.50, relative to the proceeding docketed at M-609; the sum of $2,126.88, less filing fee of $1.50, relative to the proceeding docketed at M-816, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.

---

[6] We note that the regulation and Section 503 do seem to be in conflict; however, we must reserve our judgment on that question for a case in which the issue is directly raised.

CONCURRING AND DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

I disagree with the Court's conclusion that Philadelphia Gas Works (PGW) is not entitled to the "political subdivision" exemption of Section 4 of the Liquid Fuels Tax Act[1] (Act), for liquid fuel taxes paid between April 1, 1970 and December 31, 1972.

In *Commonwealth v. Erie Metropolitan Transit Authority,* 444 Pa. 345, 281 A.2d 882 (1971), our Supreme Court held that metropolitan transit authorities which were created pursuant to the Municipality Authorities Act of 1945[2] are included in the Commonwealth's liquid fuels tax exemption. Although the Court specifically rejected the proposition that the transit authority was a political subdivision, I believe that there is a valid and critical distinction between this case and *Erie.* In this case, PGW has no identity apart from the City of Philadelphia. The authority to create or operate the gas works is not a creature of the General Assembly. Rather, the creation and operation of PGW is outlined in the Philadelphia Home Rule Charter (Charter) which interweaves PGW within the fabric of the city government. The following Charter provisions are applicable:

Article III of the Charter is entitled "Executive and Administrative Branch—Organization". Chapter 9 of that Article establishes departmental boards and commissions. Section 3-909 states: "The Gas Commission shall be constituted and appointed in accordance with the provisions of such contract as may from time to time be in effect between the city and the operator of the city gas works, or, in the absence of a contract, in such manner as may be provided by ordinance." The powers and duties of the Gas Com-

[1] Act of May 21, 1931, P.L. 149, *as amended,* 72 P.S. §2611d.

[2] Act of May 2, 1945, P.L. 382, 53 P.S. §301 et seq.

mission are outlined in Section 5-902 of the Charter which states: ''The Gas Commission shall exercise such powers and perform such duties as may from time to time be provided in contracts between the city and the operator of the city gas works or in the absence of a contract, by ordinances.'' Section 3-100(f) of the Charter then lodges the Gas Commission in the city's Department of Public Property. The actual physical plant of the city gas works comes under the control of the Department of Public Property, as Section 5-900(d) provides: ''(d) Gas, Electricity and Steam. The Department shall supervise the operation of leases of *City facilities* for the production and transmission of gas . . . It shall operate and itself, or by contract, maintain, repair and improve *City gas* . . . facilities not under lease to others and *when authorized by the Council,* acquire, design and construct additional such facilities. The Department shall from time to time inspect and test the quality of gas . . . furnished to the City and its inhabitants, and the facilities for their transmission and metering.'' (Emphasis added.) Section 5-901 provides: ''Rates and Charges. In accordance with such standards as the *Council may from time to time ordain,* the Department of Public Property shall fix and regulate rates and charges for the use of City transit facilities and for furnishing gas . . . from *City facilities* when any such facilities are not under lease to others. The standards pursuant to which rates and charges shall be fixed by the Department shall be such as to yield to the City at least an amount equal to operating expenses and interest and sinking fund charges on any debt incurred or about to be incurred for the purposes of the facility for which rates and charges are being fixed. . . .'' (Emphasis added.)

These Charter provisions to me clearly say that the production, transmission, and rate structuring of

natural gas, as well as the maintenance and improvement of the facilities therefor, are solely the responsibility of the City of Philadelphia. That the city has contracted for the *management* of PGW does not disturb the unity of identity of PGW and the city since, unlike the situation in *Erie,* the city is, and has at all times been, the owner of the real and personal property which constitute the physical components collectively known as PGW.[3] Thus, *Erie's* refusal to give ''political subdivision'' status to an independent municipal transit authority which owns and controls the physical components of the transit system is clearly inapplicable to the municipally owned and operated PGW.

The majority also has erred in relying upon *Erie* for the proposition that PGW has not met its heavy burden of proving that it is entitled to a tax exemption. In *Erie,* the Court wrote: ''We are mindful of the general proposition that claims for exemption from taxation are to be strictly construed. (Citations omitted.) But in this situation, where a public instrumentality is involved, another equally important rule is controlling, viz., 'that in the absence of a statute to the contrary, public property used for public purposes is exempt from taxation . . . and no express exemption law is needed.' Southwestern Delaware County Municipal Authority v. Aston Township, 413 Pa. 526, 198 A.2d 867 (1964).'' 444 Pa. at 349, 281 A.2d at 884. *Southwestern Delaware County Municipal Authority, supra,* held that property owned by a municipality and devoted exclusively to public purposes is immune from any form of taxation or assessments unless a statute clearly and unequivocally expresses the legislative intent that such property shall not be immune. In my view, the majority today has

---

[3] This was established by a stipulation of counsel.

fallen into error when it tells us that PGW shoulders the burden to prove its exempt status because PGW is municipal property being used for a public purpose.

The peculiar relationship between PGW and the City of Philadelphia must be distinguished from that of other municipalities which do not retain ownership of gas facilities and whose natural gas customers are serviced by private profit-motivated corporations. This is a significant distinction because municipal corporations which furnish natural gas or other public utilities within their corporate limits are not subject to regulation either for rates[4] or facilities and services[5] by the Pennsylvania Public Utility Commission, whereas farmed out responsibility for services to residents of a municipality in the ownership and operation of the facilities of profit corporations is subject to the scrutiny of the Public Utility Commission. I believe this is another reason PGW should be exempted as provided in Section 4 of the Act.

Accordingly, I would grant PGW a refund for liquid fuel taxes paid from the effective date of Section 4 of the Act, April 1, 1970, to the present.

As to the interest issue, I concur with the majority since, in my view, Section 17 of the Act, 72 P.S. §2611q, when read in conjunction with Section 503 of the Fiscal Code,[6] does not authorize interest on refunds of liquid fuel tax. I agree with the majority that *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972) controls.

---

[4] Section 301 of the Public Utility Code, Act of May 28, 1937, P.L. 1053, *as amended,* 66 P.S. §1141.

[5] Section 401 of the Public Utility Code, 66 P.S. §1171.

[6] Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §503.