398 A.2d 942

COMMONWEALTH of Pennsylvania

v.

PHILADELPHIA GAS WORKS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 9, 1979.

Decided March 14, 1979.

Obermayer, Rebmann, Maxwell & Hippel, William G. O'Neill, Barry J. Hart, Philadelphia, for appellant.

Vincent J. Dopko, Eugene J. Anastasio, Deputy Attys. Gen., Harrisburg, for appellee.

Before EAGEN, C. J., and ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The City of Philadelphia owns a collection of real and personal property, known as the Philadelphia Gas Works (PGW). In 1961, pursuant to a City ordinance, the City contracted for the managerial services of United Gas Improvement Company. United Gas Improvement managed use of the City-owned property to furnish gas to residential, commercial and industrial users within the City. The parties captioned their contract an agreement "for the operation and management of the PHILADELPHIA GAS WORKS."[1] The parties agreed that the City, through PGW, would pay United Gas Improvement a fixed managerial fee for its services and that PGW's net revenues would inure to the City of Philadelphia.

Pursuant to another ordinance, the City on January 1, 1973 turned over management of PGW to the Philadelphia Facilities Management Corporation. The 1973 contract between the City and Philadelphia Facilities is substantially the same as the 1961 contract between the City and United Gas Improvement.

[1]. "Agreement dated December 29 between the City of Philadelphia and the United Gas Improvement Company," Record at 9a.

Section 4 of the Liquid Fuels Tax Act, as amended,[2] imposes a State tax upon all liquid fuels used or sold and delivered by distributors within the Commonwealth; "excepting liquid fuels delivered to the Commonwealth, every political subdivision." PGW petitioned the Board of Finance and Revenue for refunds of taxes paid beginning April 1,

2. Act of May 21, 1931, P.L. 149, 72 P.S. § 2611d (as amended Supp.1978). Amended Section 4 provides:

"Imposition of Tax; Exemptions and Deductions.—A permanent State Tax of eight cents a gallon, or fractional part thereof, is hereby imposed and assessed upon all liquid fuels used or sold and delivered by distributors within this Commonwealth, excepting liquid fuels delivered to the United States Government on presentation of a duly authorized United States Government exemption certificate or other evidence satisfactory to the department, and such liquid fuels used or sold and delivered as are not within the taxing power of this Commonwealth under the Commerce Clause of the Constitution of the United States and excepting liquid fuels used as fuel in aircraft or aircraft engines and excepting liquid fuels delivered to the Commonwealth and every political subdivision * * * on presentation of evidence satisfactory to the department. The tax herein imposed and assessed shall be collected by and paid to the Commonwealth but once in respect to any liquid fuels.

In lieu of the foregoing taxes, a permanent State tax of one and one-half cents a gallon, or fractional part thereof, is hereby imposed and assessed upon all liquid fuels used or sold and delivered by distributors within this Commonwealth for use as fuel in propeller-driven piston engine aircraft or aircraft engines, and, except as hereinafter provided, one and one-half cents a gallon, or fractional part thereof, upon all liquid fuels used or sold and delivered by distributors within this Commonwealth for use as fuel in turbine propeller jet, turbo-jet, or jet driven aircraft and aircraft engines. Beginning January 1, 1960, and thereafter, a State tax of one cent a gallon, or fractional part thereof, is hereby imposed and assessed upon all liquid fuels used or sold and delivered by distributors within this Commonwealth for use as fuel in turbine propeller jet, turbo-jet, or jet driven aircraft and aircraft engines.

Distributors shall be liable to the Commonwealth for the collection and payment of the tax imposed by this act. The tax imposed by this act shall be collected by the distributor at the time the liquid fuels are used or sold and delivered by the distributor and shall be borne by the consumer.

The department shall allow such handling and storage losses of liquid fuels as are substantiated to its satisfaction."

Section 4 of the Act originally provided that "[t]he tax shall be payable upon liquid fuels sold and delivered to or used by the Commonwealth and every political subdivision thereof." See generally, *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 350 n.5, 281 A.2d 882, 884 n.5 (1971).

1970, the effective date of amended Section 4,[3] on its purchases of fuel for City-owned motor vehicles used in the PGW operation. The Board denied PGW refunds of taxes paid from April 1, 1970 to December 31, 1972, but granted refunds beginning January 1, 1973, the date Philadelphia Facilities Management Corporation assumed operation of PGW.[4] The Board also denied PGW's petition for interest on the taxes paid. PGW appealed to the Commonwealth Court. A majority of the Commonwealth Court agreed with the Board that PGW is not a "political subdivision" and therefore not entitled to refunds of taxes paid from April, 1970 to December, 1972.[5] The Commonwealth Court unanimously rejected PGW's claim that the Board should have awarded interest on the taxes refunded.

PGW now appeals to this Court.[6] We conclude that PGW is entitled to a refund of taxes paid from April, 1970 to December, 1972. We agree, however, that the Board properly denied PGW interest on the taxes refunded. Accordingly, we reverse the order refusing a refund and affirm the denial of interest.

3. Act of March 3, 1970, P.L. 109, § 2. PGW paid the liquid fuels taxes to its fuel suppliers, who then paid the taxes to the Commonwealth. See Liquid Fuels Tax Act, § 4, 72 P.S. § 2611d ("[t]he tax imposed by this act shall be collected by the distributor at the time the liquid fuels are used or sold and delivered by the distributor and shall be borne by the consumer").

4. Vincent Yakowicz, then Deputy Secretary for Taxation, Department of Revenue, had previously issued an "opinion letter" granting PGW, as managed by Philadelphia Facilities Management Corporation beginning January 1, 1973, a requested exemption from the Liquid Fuels Tax. Letter of August 23, 1973 from Vincent Yakowicz to Elliott Braverman, Record at 63a. The Commonwealth did not appeal the Board's partial refund of taxes paid beginning January 1, 1973.

5. *Commonwealth v. Philadelphia Gas Works*, 25 Pa.Cmwlth. 66, 358 A.2d 750 (1976). Judge Crumlish dissented from this portion of the holding. Id., 25 Pa.Cmwlth. at 73–76, 358 A.2d at 753–55.

6. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 203, 17 P.S. § 211.203 (Supp.1978).

The Statutory Construction Act of 1972 defines "political subdivision" as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district." 1 Pa.C.S.A. § 1991 (Supp.1978). In *Commonwealth v. Erie Metropolitan Transit Authority*, 444 Pa. 345, 281 A.2d 882 (1971), a municipal authority seeking exemption from liquid fuels tax claimed it was a "political subdivision" and alternatively argued that it fell within an exemption from taxation accorded "the Commonwealth." [7] This Court concluded that the municipal authority was entitled to the relevant statutory exemption as part of "the Commonwealth," but also expressed the view that a "municipal authority" was not included in the above statutory definition,[8] and hence not entitled to a "political subdivision" exemption. The Commonwealth Court applied *Erie Metropolitan Transit Authority's* discussion of the "political subdivision" exemption and concluded that PGW, "which consists only of a collection of real and personal property," [9] is not a "political subdivision."

In *Erie Metropolitan Transit Authority* this Court concluded that the Legislature, "in exempting the Commonwealth itself from the tax, likewise exempted authorities formed under enabling legislation such as the Authorities Act.[10]" Id., 444 Pa. at 348, 281 A.2d at 884. Here, too, it must be concluded that, in exempting "political subdivisions" from the Liquid Fuels Tax Act, the Legislature intended to exempt an integral part of a political subdivision. PGW is owned by the City of Philadelphia. As Judge Crumlish

7. Amended Section 4 provides the Commonwealth the same exemption. See supra note 2.

8. This Court utilized the definition of "political subdivision" found in the then applicable Statutory Construction Act, Act of May 28, 1937, P.L. 1019, § 101, formerly 46 P.S. § 601 (1969). The 1937 Act and the present Act define "political subdivision" in the same manner.

9. *Commonwealth v. Philadelphia Gas Works,* supra note 5, 25 Pa. Cmwlth. at 70, 358 A.2d at 752.

10. Act of May 2, 1945, P.L. 382, §§ 1 et seq., 53 P.S. §§ 301 et seq. (1974).

observed, "the creation and operation of PGW is outlined in the Philadelphia Home Rule Charter . . . which interweaves PGW within the fabric of city government."[11] The Commonwealth stipulates that the City is a political subdivision, and nothing in the Liquid Fuels Tax Act suggests that the tax exemption is not applicable where, as here, the fuels subject to tax are used by City-owned vehicles in a utility operation designed to service its citizens and municipal interests as well as to provide revenue for the City.

The Commonwealth urges that the agreement between the City and United Gas Improvement Company, in effect during the period the Board refused to refund taxes, creates a landlord and tenant relationship, under which United Gas Improvement "as lessee obtained possession and control of all of the Philadelphia Gas Works property with the City as lessor retaining a reversion at the termination of the lease."[12] It is true that the writing setting forth the parties' agreement contains a section headed "Lease Agreement to Operate Gas Works; Delivery of Possession and Control." But the parties agreed not that United Gas Improvement would pay the City rents, but rather the City would pay United Gas Improvement a fixed managerial fee for its services, with the City receiving net revenues. The agreement of the parties provided for the operation and management of PGW, and the "lease agreement" section merely authorized use of necessary City-owned property. Cf. e. g., *Bowman v. Bradley,* 151 Pa. 351, 24 A. 1062 (1892) (where possession of property is dependent upon performing employment contract, possession is not pursuant to a lease, but part of employment contract).

The Commonwealth argues that PGW may not claim the political subdivision exemption because neither the City nor United Gas Improvement is a captioned party to these proceedings, and PGW lacks capacity to sue. The

11. *Commonwealth v. Philadelphia Gas Works,* supra note 5, 25 Pa.Cmwlth. at 73, 358 A.2d at 754 (Crumlish, Jr., J., dissenting in part). See id., 25 Pa.Cmwlth. at 73–75, 358 A.2d at 754 (discussing applicable provisions of Philadelphia Home Rule Charter).

12. Brief for the Commonwealth 14.

alleged technical defect could easily have been corrected in the proceedings before the Board. It would appear, however, that the Commonwealth did not raise this contention. PGW filed its appeal from the Board to the Commonwealth Court on July 1, 1974. Under then-applicable Rules of Commonwealth Court, "[t]he parties shall be stated in the caption as they stood upon the record of the court or administrative agency below at the time the appeal was taken . . .." Commonwealth Court Rule 20B, abrogated, Pa.R.A.P. 5103 (effective July 1, 1976), replaced, Pa.R. A.P. 904(a). An appellate court will view a caption as amended where no new cause of action will be introduced. See e. g., *Minkin v. Minkin,* 336 Pa. 49, 7 A.2d 461 (1939); 9 Standard Pennsylvania Practice Ch. 39 § 154 (rev. ed. 1962); see also 3 Standard Pennsylvania Practice Ch. 12 § 7 (1952). And our Rules of Civil Procedure provide that a challenge to a party's capacity to sue is waived unless raised in a timely fashion. *Erie Indemnity Co. v. Coal Operators Casualty Co.,* 441 Pa. 261, 272 A.2d 465 (1971); see Pa.R.Civ.Proc. 1017(b)(5) & 1032; 2 Goodrich-Amram 2d § 1032:3. We decline to view the alleged, but not previously raised, technical defect as a basis for denying the refunds.

The Commonwealth further argues that Section 17 of the Liquid Fuels Tax Act, 72 P.S. § 2611q (as amended Supp.1978), bars PGW's refund claim. Section 17 now provides:

"The Board of Finance and Revenue may refund to distributors taxes, penalties, and interest paid by them on liquid fuels delivered to the United States government, or paid as the result of an error of law or of fact or of both law and fact. Claims for such refunds shall be made under the procedure prescribed by the Fiscal Code."

The Commonwealth contends that, under a strict interpretation of this refund provision, see e. g., *Land Holding Corporation v. Board of Finance and Revenue,* 388 Pa. 61, 130 A.2d 700 (1957), only "distributors," and not political subdivisions, may obtain a refund of the tax. (The Commonwealth suggests that PGW could have contracted with its "distributors" to bring the refund suit and, if successful, to turn over

the refunds.) Alternatively, the Commonwealth would impose upon refunds the condition that the fuels be delivered to the "United States government."

Were we to accept the Commonwealth's view that only "distributors" may petition for refunds of liquid fuels taxes erroneously paid, or that fuels must first be delivered to the United States government, we would impute to the Legislature the principal intent to accord "political subdivisions" an exemption from taxation and, at the same time, restrain these subdivisions in any effort to recover taxes erroneously paid. Moreover, it is possible that in doubtful cases political subdivisions would be reluctant to pay liquid fuels taxes. We must, of course, assume that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1922(1) (Supp.1978). It must be concluded that the Legislature intended to permit a subdivision directly to petition for a refund of taxes where the subdivision claims the burden of taxation was erroneously imposed. See Fiscal Code, Act of April 9, 1929, P.L. 343, § 503(a), 72 P.S. § 503(a) (as amended Supp.1978).[13]

■ Though the Board improperly denied refunds of taxes paid from April 1, 1970 to December 31, 1972, we hold

---

**13.** Indeed, the Board and the Secretary of Revenue have promulgated regulations "in order to effect refunds of liquid fuels tax to political subdivisions. . . ." 1 Pa. Bull. 278 (1970).

The promulgated regulations provide for a one year statute of limitations on claims for refunds. The Fiscal Code, § 503(a), 72 P.S. § 503(a), on the other hand, provides that, except in certain circumstances not apposite here, "[a]ll such petitions for refund must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expired . . . ." The Commonwealth contends that the one year statute of limitations set forth in the regulation governs. For statutory support, the Commonwealth points to another part of Section 17 of the Liquid Fuels Tax Act, 72 P.S. § 2611q, which provides that "[e]very such claim shall be made annually for the preceding year." We agree, however, with PGW that the Commonwealth reads this part of Section 17 out of context. The disputed part of Section 17 establishes a mechanism for "reimbursements" of taxes on liquid fuels used in certain machinery.

The Commonwealth also argues that PGW has failed to set forth the amount of its claim, but this contention, too, is without merit.

that it properly denied interest. In *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972), the executors of an estate overpaid inheritance taxes. After a life tenant's death, the executors claimed credit both for overpayment and interest. The Commonwealth allowed credit for the overpayment, but disallowed interest. The estate protested, and the court of common pleas held the Commonwealth liable for interest. This Court reversed. Here, PGW voluntarily, albeit erroneously, paid taxes and the Commonwealth did not solicit such overpayment. It must be concluded, as in *Purdy Estate,* that interest was equitably denied.

Order of the Commonwealth Court denying PGW's petitions for refunds of liquid fuels taxes paid from April 1, 1970 to December 31, 1972 is reversed; order denying interest affirmed.

O'BRIEN, J., did not participate in the consideration or decision of this case.

MANDERINO, J., filed a concurring and dissenting opinion.

MANDERINO, Justice, concurring and dissenting.

I join in the majority opinion as to the granting of Philadelphia Gas Works' petitions for refunds of liquid fuel taxes paid for the years involved, but I disagree with the denial of interest. The government has used the taxpayer's money, and it is only fair and equitable that the government not merely return the money, but do so with interest.

The majority justifies a denial of interest payment on the basis that Philadelphia Gas Works voluntarily paid the taxes. This is irrelevant. The fact remains that the government has had the use of the taxpayer's money since 1970. The result of paying interest is especially required in light of our abolishment of sovereign immunity. *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978). Since we have held that the government enjoys no special immunities from negligence, there is no further reason to hold the government immune from paying interest in this case.