560 A.2d 1361

MOON AREA SCHOOL DISTRICT, Appellee

v.

James A. GARZONY, t/d/b/a Airport Mobile Service, Globe Airport Parking Company, Greater Pittsburgh Service Corporation, t/d/b/a Airways Airport Parking, Grant Oliver Corporation, Redcap Airport Parking, Incorporated

v.

COUNTY OF ALLEGHENY, Appellant.

MOON AREA SCHOOL DISTRICT, Appellee

v.

James A. GARZONY, t/d/b/a Airport Mobile Service, Globe Airport Parking Company, Greater Pittsburgh Service Corporation, t/d/b/a Airways Airport Parking, Grant Oliver Corporation, Redcap Airport Parking, Incorporated

v.

COUNTY OF ALLEGHENY.

Appeal of GRANT OLIVER CORPORATION.

Supreme Court of Pennsylvania.

Argued March 6, 1989.

Decided June 26, 1989.

180

James J. Dodaro, County Sol., Ira Weiss, Deputy County Sol., Allegheny County Law Dept., Pittsburgh, for County of Allegheny.

John H. Bingler, Jr., Thorp, Reed & Armstrong, Pittsburgh, for Grant Oliver Corp.

John A. Robb, Jr., Robb, Leonard & Mulvihill, Pittsburgh, for Moon Area School Dist.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is a consolidated appeal from an order of the Commonwealth Court which reversed and remanded two orders of the Court of Common Pleas of Allegheny County, 107 Pa.Cmwlth. 375, 529 A.2d 540 (1987). The orders reversed by the Commonwealth Court had prohibited Appellee, the Moon Area School District, from collecting a nonresidential patron parking tax from Appellant, Grant Oliver Corporation. The orders reversed by the Commonwealth Court also had denied the School District's petition to have released to it tax funds already collected but escrowed by Grant Oliver Corporation. Grant Oliver Corporation is the managing operator of parking lots owned by Appellant, Allegheny County, and located adjacent to the County owned Greater Pittsburgh International Airport (which is also located in the Moon Area School District). This is the second time that the dispute over this parking tax has reached this

Court and, for the second time, we must reverse the Commonwealth Court.

The facts are as follows. On March 26, 1979, pursuant to the Local Tax Enabling Act, 53 P.S. § 6901 *et seq.*, the Moon Area School District adopted Resolution 79–2, which imposed a 15% tax on the fees paid by patrons of nonresidential parking lots located within the School District. Responsibility for collecting the tax, and making the necessary returns to the School District, is imposed upon the *operators* of each such non-residential parking lot who are entitled to retain 2% as compensation for their collecting duties. Resolution 79–2 specifies that an operator is any person who collects the parking charge from a patron and includes any governmental body, governmental subdivision, municipal corporation, public authority, non-profit corporation or any person performing as their agent. The Resolution provides that operators are to file monthly tax returns and pay over the taxes collected to the School District. The assessment of penalties, interest and liquidated damages for non-compliance, as well as criminal penalties, is also provided.

Appellant, Grant Oliver Corporation, and others similarly situated filed a statutory appeal on April 16, 1979, challenging the substantive legality and constitutionality of the tax and the procedure by which it was adopted. The trial court in this first action imposed a supersedeas barring the imposition of the tax. Subsequently, the parties agreed (and the trial court ordered) that the Petitioners, including Grant Oliver Corporation, withdraw their challenge to the propriety of the School District's adoption of Resolution 79–2 in exchange for which the School District agreed to withdraw a challenge to the supersedeas until thirty days after the trial court's decision on the merits.

The trial court in that case, on June 8, 1979, declared the tax resolution to be invalid and enjoined the School District from seeking to enforce it. The School District appealed and the Commonwealth Court, in a *per curiam* opinion, affirmed the decision of the trial court. The School District

took no action during that appeal to lift the supersedeas or to suspend the trial court's injunction. They did, however, reassert their challenge to the supersedeas and bond demand before this Court on appeal. Ultimately we reversed the order of the Commonwealth Court and dismissed the objections to the tax. *Airway Arms, Inc. v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982), *appeal dismissed,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

During the period between the School District's adoption of the tax resolution and October 30, 1981, Appellants, Grant Oliver Corporation and Allegheny County, were parties to a "Concession Agreement" whereby Grant Oliver Corporation agreed to operate the parking facilities at the airport. After that date, however, a new and more comprehensive agreement was entered into between these two parties entitled a "Management Agreement."

The School District took no steps to implement the collection of the tax between their adoption of the resolution and this Court's decision on May 28, 1982, nor did they anticipate any revenues from the tax in their budgets.

On June 7, 1982, the School District appointed their first collector under the resolution. On June 30, 1982, the School District's collector notified Grant Oliver Corporation, *inter alia,* that the tax resolution would take effect immediately and that it was required to obtain the necessary registration certificate. Grant Oliver Corporation, at the direction of Allegheny County, began collecting the tax on June 12, 1982, but it deposited the funds collected into an interest-bearing escrow account.

The School District, through its collector, assessed and demanded of Grant Oliver Corporation $5,643,495.00 on April 15, 1983. When the latter failed to comply with this demand, the School District brought the instant action in equity on July 15, 1983. In this complaint, the School District demanded by way of relief that Grant Oliver Corporation do the following: file an accounting of all nonresidential parking transactions from April 25, 1979 to that date;

file an accounting and pay over to the School District all tax monies collected during the period including penalties, interest and consequential and liquidated damages, and pay over any tax monies collected as a set-off against any amount actually owed and to be determined. Grant Oliver Corporation joined Allegheny County as an additional defendant. Later, on November 14, 1984, the School District assessed Grant Oliver Corporation an additional $3,093,475.05.

The trial court set out to resolve two issues. The first was whether the School District should be estopped from giving retroactive effect to our determination that the tax was legal because during the pendency of the appeals in that litigation they took no positive steps to lift either the supersedeas or the trial court injunction against collection. The trial court determined that Grant Oliver Corporation, during part of the period in question (when it operated under the "Concession Agreement") was an independent contractor and therefore subject to the requirement to collect the tax. However, the trial court determined that the School District had not acted to have either the supersedeas or the injunction stricken and therefore that they had waived their right to do so under Pa.R.A.P. 1732(a).[1] The trial court further determined that laches and equitable estoppel precluded the School District's claim for the collection of the taxes covered during the period 1979–1982.

The second issue addressed by the trial court was whether, as agent for the County, Grant Oliver Corporation could be compelled to collect the parking tax for the School District. The trial court determined that under the original "Concession Agreement," Grant Oliver Corporation was an

---

1. Pa.R.A.P. 1732(a) provides:
   Rule 1732. Application for Stay or Injunction Pending Appeal
   (a) Application to Lower Court. Application for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature of peremptory mandamus, must ordinarily be made in the first instance to the lower court, except where a prior order under this chapter has been entered in the matter by the appellate court or a judge thereof.

independent contractor. However, the trial court found that under the "Management Agreement" of October 30, 1981, the County had reserved and exercised such a degree of control over the ongoing operation of its parking lots sufficient to make Grant Oliver Corporation the County's "agent,"[2] thereby sharing in the immunity of the County from the obligation to *collect* the School District's parking tax in accordance with this Court's ruling in *Borough of Wilkinsburg v. School District of Wilkinsburg*, 365 Pa. 254, 74 A.2d 138 (1950).[3] The trial court denied the School District any relief and the latter appealed to the Commonwealth Court, which reversed.

The Commonwealth Court first examined the two contracts between the County and Grant Oliver Corporation and the testimony adduced at trial and determined that the later "Management Agreement" had not changed the latter's status from independent contractor to that of agent or employee of the County. They went on to find that the rule of *Borough of Wilkinsburg, supra,* was applicable only when one political subdivision seeks to compel another to collect its tax at the latter's own expense, thereby rendering Grant Oliver Corporation's putative status as an "agent" of the county irrelevant in any event.[4] They determined that

**2.** The trial court applied this Court's test as set forth in *Feller v. New Amsterdam Casualty Co.,* 363 Pa. 483, 70 A.2d 299 (1950), set forth in the text of this opinion below. As also noted below, we think that the appropriate distinction to be drawn in this case is that between employee or *servant* and independent contractor; not that between agent and independent contractor.

**3.** In *Borough of Wilkinsburg, supra,* we held that without express statutory consent, a municipality cannot impose the duty of collecting a tax on any other political subdivision or agency of the Commonwealth. This holding is further discussed below.

**4.** On this point, the Commonwealth Court stated:

Furthermore, even if the Management Agreement changed Grant Oliver's status from independent contractor to agent of the County, we are of the opinion that *Wilkinsburg* would not negate its duty to collect the parking tax. We read *Wilkinsburg* to apply only when one political subdivision seeks to force another political subdivision, *at the latter's own expense,* to collect the former's tax. The burden of collecting the parking tax here, however, is placed not on the County, but on Grant Oliver, a for-profit corporation performing a propriety function on behalf of the County. The holdings in *Wil-*

the tax collecting duty imposed by the resolution applied to Grant Oliver Corporation as it did to any operator of private parking facilities. The Commonwealth Court also found that the trial court erred in applying Pa.R.A.P. 1732(a) and erred in hence concluding that the School District waived the right to strike the supersedeas and the injunction. The Commonwealth Court's conclusion was based on a reading of Pa.R.A.P. 1736(b) which provides for a self-executing supersedeas of the trial court's entire order when the School District entered this appeal.[5]

The Commonwealth Court refused to find that the equitable doctrines of estoppel or laches barred the School District's claims for taxes between April 1979 and May 1982. They therefore reversed the order of the trial court and remanded the case for an accounting of the tax monies due the School District.

We granted the Petitions for Allocatur filed by Grant Oliver Corporation and Allegheny County because we were convinced that the Commonwealth Court's decision in the

kinsburg, and the case cited therein, *Marson v. City of Philadelphia,* 342 Pa. 369, 21 A.2d 228 (1941), rest on the premise that one political body cannot *command* another political body of equal or greater stature to perform an act, such as collecting taxes. This rationale does not apply to a corporation like Grant Oliver, however, especially since it is undisputed that the School District can impose the tax collecting duty on other operators of private parking facilities within the School District. *See Wilkinsburg.* Thus, whether Grant Oliver is viewed as an independent contractor or as an agent or employee of the County, the tax-collecting duty mandated by the Resolution is not altered. 529 A.2d 540, at 544 (footnote omitted.)

5. Pa.R.A.P. 1736(b) and its note states:
(b) *Supersedeas automatic.* Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in subdivision (a) of this rule shall operate as a supersedeas in favor of such party.
*Note:* This rule is self-executing and a party entitled to its benefits is not required to bring the exemption to the attention of the court under rule 1732 (application for stay or injunction pending appeal). However, the appellee may apply under rule 1732 for elimination or other modification of the automatic supersedeas or under rule 1737 (objections to security) for an order requiring security as a condition to the continuance of the stay, or for relief under any other applicable provision of this chapter.

instant case is directly contrary to decisions reached by this Court in *Borough of Wilkinsburg, supra; Feller v. New Amsterdam Casualty Co., supra;* and *Commonwealth v. Philadelphia Gas Works,* 484 Pa. 60, 398 A.2d 942 (1979). For the reasons set forth below, we reverse.

In *Borough of Wilkinsburg,* the Borough sought to compel a school district to collect a tax imposed by the Borough on admissions to entertainments, including athletic events, conducted by the school district. We held that without expressed statutory consent, a municipality could not impose upon the Commonwealth itself the duty of collecting a tax levied by the municipality, and by the same token it could not, without express legislative permission, impose such a duty upon any other political subdivision or agency of the Commonwealth. 74 A.2d, at 139. We reaffirm that holding today. Contrary to the reasoning of the Commonwealth Court in this case, the reason for the rule in *Borough of Wilkinsburg* does not rest solely or even principally on the premise that one political body lacks the inherent power to command another political body of equal or greater stature to perform an act, such as collecting taxes. Nor is the rule limited only to those situations where one political subdivision seeks to force another political subdivision, *at the latter's own expense,* to collect the former's tax, as the Commonwealth Court thought.[6] The rule in *Borough of Wilkinsburg* is based on broader considerations. At bottom, it is a rule designed to insure the orderly conduct of business and public affairs between and amongst the various governmental agencies in the Commonwealth and to prevent needless, wasteful and time-consuming controversies arising when one agency or political subdivision decides to challenge another. The instant case is a perfect example of the evil the rule is designed to avoid. This matter has been contested for almost ten years. It has twice been before this Court. Excessive judicial resources have been devoted to the matter and excessive public funds

---

6. The Commonwealth Court view of *Borough of Wilkinsburg* is fully set forth at footnote 4, *supra.*

have been spent in order to litigate it. All this could have been avoided if the rule in *Borough of Wilkinsburg* had been more carefully followed. In short, we conclude that the School District here had no authority to impose the duty to collect their parking tax on Allegheny County. But the question remains as to whether Grant Oliver Corporation is protected by the County's "immunity" in the matter. We find that it is.

Just like a private corporation, any governmental agency or political subdivision, and indeed the Commonwealth itself, can only act or carry out its duties through real people—its agents, servants or employees. It would be easy to adopt the simple test that any governmental activity carried out by anyone (or any entity) at governmental behest or under governmental regulation is insulated under *Borough of Wilkinsburg* (or some other such immunity) and that such a person or entity be construed as an employee, servant, or, at least, as an agent, of the Commonwealth or one of its political subdivisions for such purposes.

In modern times, however, that would be going too far. In the Nineteenth Century, state action and private action were concepts clearly distinct and separate. But today, "the growth and proliferation of public works and controls have increasingly reduced 'state' and 'private' action to the conceptual end points on a broad and lengthy bond of government and private joint ventures." Abernathy, *Civil Rights* (West. Publ. Co.1980), p. 66.[7] Who, one hundred years ago, for example, could have envisioned that a county government would participate in the private sector to the extent that it would establish a vast parking lot system next to a large international airport? Since many private sector activities today are touched by government involvement, investment, participation or regulation, we think that a more careful analysis is necessary to determine whether a person or entity is acting as a governmental agent or

7. Compare, *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) with *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

employee for purposes of *Borough of Wilkinsburg.* We undertake such an analysis.

In *Commonwealth v. Philadelphia Gas Works,* 484 Pa. 60, 398 A.2d 942 (1979), the City hired a company to manage, operate, and perform managerial services for the city owned gas works which furnished gas to residential, commercial and industrial users within the city. Pursuant to the lease agreement with authorized the management company to use the City's property, the management company was paid a fixed managerial fee with nest revenues going to the City. Construing the exception to the Liquid Fuels Tax Act, 72 P.S. § 2611d, whereby a tax was imposed on liquid fuels delivered within the state, *excepting* liquid fuels delivered to a *political subdivision* of the Commonwealth, this Court held that the political subdivision exception applied to the management company because a political subdivision necessarily included not only the political subdivision itself, but any "integral part of a political subdivision." 484 Pa., at 65, 398 A.2d 942. We find it impossible to draw a meaningful distinction between that case and this one. It seems clear to us that if the management company hired to run a city gas works is part of the political subdivision for taxing purposes, then the management company, Grant Oliver Corporation, hired to run a county airport parking lot must also be part of the political subdivision for tax collecting purposes. To hold otherwise would be mischievous.

■ In *Philadelphia Gas Works, supra,* we did not deal with the question of whether the management company there was an agent of the City or an independent contractor. We do think, however, that in cases of this type, examination and application of the concept of independent contractor is relevant and useful. The term "independent contractor" is more appropriately contrasted with that of "servant" rather than "agent." *Commonwealth v. Minds Coal Mining Corp.,* 360 Pa. 7, 60 A.2d 14 (1948); 41

Am.Jur.2d Independent Contractors, § 5.[8] The concept is usually used in contrast with "servant" in order to determine a master's or an employer's vicarious tort liability, and in contrast with "employee" in order to determine an employer's liability to its employee under various types of social legislation. 41 Am.Jur.2d Independent Contractors, § 5. Here, tort law distinction between "independent contractor" and "servant" may be usefully employed to determine whether the rule in *Borough of Wilkinsburg* has been properly applied. Our review of the record leads us to the unavoidable conclusion that at all times relevant hereto, and for these purposes only, Grant Oliver Corporation was a servant of the County rather than an independent contractor, and we so hold. Since they were a servant of the County, they are immune from being obliged to collect the School District tax just as any other employee or servant of the County would be.[9]

■ In *Feller v. New Amsterdam Casualty Co., supra,* we set forth the principal test for determining whether one is a servant (or employee) or an independent contractor as follows:

8. *Commonwealth v. Minds Coal Mining Corp., supra,* 60 A.2d at 20–21 states:
 The Restatement of the Law of Agency makes clear the difference between an agent who is a servant, and an agent who is not a servant but is an independent contractor. It deals with the different liability of the principal as to agents who are servants and those who are not. It considers also the difference as to right of control in each case. ... It would thus seem that control over the means of performance is not the test of agency, but is the test of the relationship of master and servant. The agent may be an independent contractor, who by contract is responsible only for the end result but who is not subject to control by the principal and whose tortions or illegal acts are not attributed to his principal. On the other hand, the agent may be an employe or servant, subject to control as to the ways and means employed, and having the capacity of making his principal liable for his tortions or unlawful acts....

9. It perhaps sounds odd, at first, to refer to a corporation as a "servant" of the County, but we think that our law permits no other conclusion. Grant Oliver Corporation's own employees would therefore be "subservants" of the County and would enjoy the same immunity. See, Restatement of Agency 2d, § 5(2).

The legal distinction between an employee and an independent contractor is so well established as to require little, if any, discussion. The characteristics of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result: ... "Broadly stated, if the contractor is under the control of the employer, he is a servant; if not under such control, he is an independent contractor.... It is not ... the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor":....

363 Pa., at 486, 70 A.2d 138 (footnotes omitted).

Applying that test to the facts in this case, we conclude that under both the old "Concession Agreement" and under the new "Management Agreement," Grant Oliver Corporation was controlled by a very short leash held by the County and its Director of the Department of Aviation. The earlier "Concession Agreement" included the following:

8. *USE OF SPACE.* CONCESSIONAIRE agrees to operate the premises only for the express purpose or purposes hereinbefore stated for the benefit of the public; to furnish good, prompt and efficient service hereunder, adequate to meet all demands therefor at the Airport; to furnish all merchandise, facilities and service on a fair, equal and non-discriminatory basis to all users thereof; to charge fair, reasonable and nondiscriminatory prices for all merchandise, facilities and services; to sell only such items of merchandise and/or to render only such services as may be approved in writing from time to time by the Director; to submit to the Director an itemized list of all prices to be charged for merchandise and/or services; to charge only such prices for merchandise and/or services as may be approved by the Director; to make no devia-

tion from the prices approved by the Director, except with the written consent of the Director.... (R. 749a—emphasis added).

10. *SIGNS.* No signs, posters or similar devices shall be erected, displayed or maintained in or about the space herein granted without the written approval of the Director, and any not approved by him may be removed by the said Director at the expense of CONCESSIONAIRE and without liability of any kind whatever to County. (R. 750a–751a).

15. *HOURS OF OPERATION.* CONCESSIONAIRE shall remain open for and conduct business during such hours of the day and on such days of the week as may properly serve the needs of the public. The determination by the Director of proper business hours and days, as evidenced from time to time by notice to CONCESSION-AIRE, shall control and must be complied with by CON-CESSIONAIRE. (R. 752a).

20. *REPAIRS.* CONCESSIONAIRE shall accept the space in its present condition and shall make such alterations and repairs thereto as the COUNTY may from time to time direct. CONCESSIONAIRE shall not install any fixtures or make any alterations, additions, improvements or repairs without the written approval of the Director.

21. *INSPECTION.* COUNTY shall have the right at any time and as often as it considers necessary to inspect the space granted to enter therein and to take such action therein as may be required for the protection of persons or property and for the enforcement of any of the terms and conditions hereof. (R. 753a–754a).

22. *CONDUCT.* The operations of CONCESSION-AIRE, the employees and invitees and those doing business with CONCESSIONAIRE shall be conducted in an orderly and proper manner and so as not to annoy or disturb or be offensive to others at the Airport. COUN-TY shall have the right to object to CONCESSIONAIRE as to the demeanor, conduct and appearance of CONCES-SIONAIRE'S employees, invitees, and those doing busi-

ness with CONCESSIONAIRE, whereupon CONCES-SIONAIRE will take all steps necessary to remove the cause of the objection. (R. 754a).

Paragraph "26" of the Concession Agreement gave the County the right of revocation on a number of grounds including situations where the County determined that the agreement had become "contrary and detrimental to the interest of County or the public interest and welfare." (R. 758a). Paragraph "31" makes Grant Oliver Corporation subject to county rules and regulations both new and existing. (R. 758a–759a). In short, the County retained the right to dictate the services rendered, to set the prices for such services, to approve of signs, to determine hours and days of operation, to require repairs, to approve alterations, to inspect at any time, to control the demeanor, conduct and appearance of workers, to revoke easily and to impose additional rules and regulations. It is clear to us that under *Feller, supra,* the County retained the right and authority to interfere and control Grant Oliver Corporation's operation of the parking lot. The new "Management Agreement" of October 30, 1981, gave the County even more extensive and detailed rights. The changes were summarized in the trial court opinion as follows:

In 1981, the parties concluded a new 57–page management agreement. This agreement, which remains in force through the present, is much more detailed and provides for significantly more control by the County over Grant Oliver's daily activities. Indeed, according to Mr. Donahoe, the County's Director of the Department of Aviation, increased control was the primary reason for changing the contract. Mr. Donahoe, upon taking office in 1980, recommended that the County assume a more active role in the operation of the airport lots in order to maximize revenues and improve operations. To accomplish this, he suggested that Grant Oliver be made a manager rather than a concessionaire.

Under the terms of the management agreement, the County received between 95–97% of revenues and pays

95–97% of expenses. Grant Oliver is paid an administrative fee and a percentage based on overall revenues. Various provisions demonstrate that the County foresaw an active role for itself in the operation of its parking lots. The County determines not only the parking rates in effect, but also the type of parking services to be provided and the amount of space available for parking. It establishes accounting and revenue control procedures. It may specify the number of employees necessary and has a right of approval of the full-time supervisor chosen by Grant Oliver. The County retains a unilateral right of termination. While the concession agreement contained some of the same or similar provisions, the management agreement is much more detailed. From both the testimony presented and the agreement itself, it is obvious that the County took significant strides toward tightening its oversight of all aspects of the parking lot operation when the 1981 agreement was drafted.

Evidence was also presented with respect to the County's actual assumption of increased responsibility.... Testimony established that the County, in practice, was much more actively involved in operating the lots than they had been under the concession agreement. (Trial court opinion, at 6–7).

Under both agreements, it is plain that the County had such an extensive *right* to control (and later on exercised such rights) that Grant Oliver Corporation was, as a matter of law, a servant and not an independent contractor. This reinforces and confirms our conclusion that under *Borough of Wilkinsburg,* Grant Oliver Corporation, a servant of Allegheny County, could not be compelled to collect the School District's tax.

■ One final question remains, however. The taxes actually collected and escrowed by Grant Oliver Corporation since 1982 now amount to several millions of dollars. We have already held, as noted above, that the underlying tax was valid. While Grant Oliver Corporation should not have been required to collect it, and cannot be forced to do so in

the future, the monies erroneously collected properly belong to the Appellee, Moon Area School District, and must be turned over to them. This is subject, however, to retention by Grant Oliver Corporation of reasonable costs and expenses for having been required to collect the tax. The calculation of what constitutes reasonable costs and expenses of collection is best left to the trial court.

The decision of the Commonwealth Court in this matter must be reversed and the matter remanded to the Court of Common Pleas of Allegheny County for further proceedings consistent with this opinion.

It is so ordered.

LARSEN, J., did not participate in the consideration or decision of this case.

STOUT, former Justice, did not participate in the decision of this case.