529 A.2d 540

Moon Area School District, Appellant *v.* James A. Garzony t/d/b/a Airport Mobile Service, Globe Airport Parking Company, Greater Pittsburgh Service Corporation, t/d/b/a, Airways Airport Parking, Grant Oliver Corporation, Redcap Airport Parking, Incorporation and County of Allegheny, Appellees.

Argued May 21, 1987, before Judges DOYLE and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*John A. Robb, Jr., Robb, Leonard & Mulvihill,* for appellant.

*John H. Bingler, Jr.* and *Kevin C. Abbott, Thorp, Reed & Armstrong,* for appellee, Grant Oliver Corporation.

*Ira Weiss,* Deputy Solicitor, with him, *James J. Dadaro,* Solicitor, for appellee, County of Allegheny.

OPINION BY JUDGE DOYLE, July 14, 1987:

In this consolidated appeal, the Moon Area School District (School District) appeals from two orders of the Court of Common Pleas of Allegheny County that barred the School District from seeking the collection of a non-residential patron parking tax from the Grant Oliver Corporation (Grant Oliver), and also denied the School District's petition to release tax funds already collected, but escrowed by Grant Oliver. We reverse.

This long-running dispute has its genesis in a tax resolution passed by the School District on March 26,

1979, when it adopted Resolution 79-2 (Resolution), which levied a 15% tax[1] upon the fee paid by patrons of non-residential parking lots within the School District. Under the Resolution, the operators of each non-residential parking lot located within the School District are required to collect the tax from parking patrons, for which the operators are entitled to retain 2% as compensation. The Resolution further provides that the operators must file monthly tax returns and pay the tax monies collected to the School District, and prescribes penalties for failure to collect and pay the tax.

Grant Oliver, by agreement with Allegheny County (County), operates the County-owned parking lots at the Greater Pittsburgh International Airport (Airport), located within the School District. On April 16, 1979, prior to the effective date of the Resolution, April 25, 1979, Grant Oliver and other parking lot operators filed a statutory appeal challenging the constitutionality of the Resolution. Although both the trial court and this Court held that the tax was constitutionally infirm, on May 28, 1982, our Supreme Court reversed and held that the tax was not unconstitutional. *Airway Arms, Inc. v. Moon Area School District*, 498 Pa. 286, 446 A.2d 234 (1982), *appeal dismissed*, 459 U.S. 1094 (1983).

Prior to our Supreme Court's decision in *Airway Arms*, Grant Oliver did not collect the parking tax; following the decision, however, Grant Oliver did begin collecting the parking tax from its patrons, although it escrowed the monies, rather than paying them to the School District.

On April 15, 1983, the School District, in accordance with the Resolution, assessed Grant Oliver over

---

[1] According to the School District, the rate of tax is now 7% (Brief of Appellant, p. 7).

$5.6 million for back taxes, interest, penalty charges and liquidated damages dating from April 25, 1979, the effective date of the Resolution. Upon Grant Oliver's failure to pay, the School District instituted an equity action in the Court of Common Pleas of Allegheny County on July 15, 1983, seeking payment of the back taxes and an order compelling Grant Oliver to collect and pay the taxes to the School District in the future. On June 30, 1986, the trial court "barred" the School District from seeking payment of the parking tax from Grant Oliver up to May 28, 1982, the date of the Supreme Court's decision in *Airway Arms*, and also "barred" the School District from attempting to collect payments in the future from Grant Oliver. In a subsequent equity action, the trial court denied the School District's petitions to compel Grant Oliver to turn over the tax monies it already had collected and escrowed, and also denied the School District's application to permit it to place a tax collector at the situs of the parking lots operated by Grant Oliver. The School District's appeals from these orders have been consolidated for resolution before us.

The first issue on this appeal is whether the trial court was correct in ruling that Grant Oliver was an "agent"[2] of the County and therefore could not be compelled to collect and pay the parking tax, despite the Supreme Court's ruling that the Resolution was constitutional.

Prior to the passage of the Resolution, Grant Oliver operated the County-owned parking lots at the Airport pursuant to a "Concession Agreement" under which

---

[2] Although the reason is uncertain, it is clear from the briefs and the record that both the parties and the trial court used the terms "agent" and "employee" synonymously. For purposes of this opinion only, we will also treat and employ the terms as synonymous.

Grant Oliver concededly was an independent contractor. In October 1981, however, before the Supreme Court's decision in *Airway Arms,* Grant Oliver and the County entered into a new "Management Agreement" for the operation of the parking lots. The trial court found that, under the Management Agreement, Grant Oliver's status changed from independent contractor to agent for the County. The trial court further reasoned that, in light of *Borough of Wilkinsburg v. School District of Wilkinsburg,* 365 Pa. 254, 74 A.2d 138 (1950), the School District could not compel an agent of the County to collect the School District's tax.

In *Wilkinsburg,* wherein a borough sought to compel a school district to collect an amusement tax, our Supreme Court stated:

> Without express statutory consent a municipality cannot impose upon the Commonwealth itself the duty of collecting a tax levied by the municipality (Marson v. Philadelphia, 342 Pa. 369, 375, 21 A.2d 228, 231) and by the same token it cannot, without express legislative permission, impose such a duty upon any other political subdivision or agency of the Commonwealth.

365 Pa. at 257, 74 A.2d at 139. Apparently, Grant Oliver and the County concede that *Wilkinsburg* does not protect an independent contractor of a political subdivision from the imposition of a duty to collect the tax of another political subdivision. Instead, they argue that the proscription in *Wilkinsburg* covers not only political subdivisions, but their agents and employees as well. Before reaching this issue, however, it is first necessary to compare the provisions of the Concession Agreement, under which Grant Oliver admittedly was an independent contractor, with those of the 1981 Management Agreement to see whether Grant Oliver's status changed from independent contractor to agent or employee of the County.

As a general proposition, the distinction between an independent contractor and an agent or employee is based on the amount of control exercised or exercisable by the other party to the contract over the manner in which the work is to be performed. *Feller v. New Amsterdam Casualty Co.,* 363 Pa. 483, 70 A.2d 299 (1950). The greater the control by another over the manner of the work, the greater the likelihood that one is an agent or employee, not an independent contractor. However, other factors to consider include the terms of the parties' agreement; the nature of the work to be performed; the skill required for performance of the work; whether one employee is engaged in a distinct occupation or business; which party supplies the tools or equipment; the method of payment; whether the work is part of the employer's regular business; and the right to terminate the relationship at any time. *Hammermill Paper Co. v. Rust Engineering Co.,* 430 Pa. 365, 243 A.2d 389 (1968); *Surowski v. Public School Employees' Retirement System,* 78 Pa. Commonwealth Ct. 490, 467 A.2d 1373 (1983).

The trial court concluded from its review of the Concession Agreement and the Management Agreement that the latter provided the County with significantly more control over Grant Oliver's performance than the former and, thus, that Grant Oliver's status changed to agent or employee of the County. Our review of the two agreements compels us to disagree.

Although Grant Oliver is termed an "independent contractor" in the Concession Agreement, but a "manager" in the Management Agreement, and although the two documents greatly differ in length,[3] the agreements are quite similar in all material respects.

---

[3] The Concession Agreement is 27 pages long, whereas the Management Agreement totals 57 pages.

Each provides that Grant Oliver is given the right to use County property near the Airport to operate parking facilities; Grant Oliver. is to account monthly for gross revenues; Grant Oliver is to receive a fixed administrative fee and a percentage of net income; the agreement is fixed term; the County sets parking rates and hours of operation; Grant Oliver is to furnish a County-approved manager and all other necessary employees; Grant Oliver is not to install signs, improvements, fixtures or coin-operated machines without County approval; Grant Oliver is to make repairs as specified by the county and perform routine maintenance; Grant Oliver is to indemnify the County, provide specified insurance, and post a performance bond; Grant Oliver is to compile and maintain complete accounting records, and permit inspection of the same by the County; Grant Oliver is not to discriminate, permit liquor and/or drugs at the facilities, or conduct business in other than an orderly and proper fashion, and the County can enter and inspect the premises as it desires; Grant Oliver is not to assign its rights or delegate its duties; and the County may terminate the agreement in event of Grant Oliver's bankruptcy, insolvency, abandonment, breach of agreement, or if it is in the public interest.

In sum, the only real difference between the two agreements is that the Management Agreement "fleshes out" a number of the provisions of the earlier Concession Agreement, e.g., it sets forth detailed accounting controls. It does not, however, substantially or materially alter the relationship between Grant Oliver and the County. Accordingly, we hold that Grant Oliver remained an independent contractor and thus was and is under a duty to collect and pay the parking tax to the School District as provided in the Resolution.

Furthermore, even if the Management Agreement changed Grant Oliver's status from independent con-

tractor to agent of the County, we are of the opinion that *Wilkinsburg* would not negate its duty to collect the parking tax. We read *Wilkinsburg* to apply only when one political subdivision seeks to force another political subdivision, *at the latter's own expense,* to collect the former's tax. The burden of collecting the parking tax here, however, is placed not on the County, but on Grant Oliver, a for-profit corporation performing a proprietary function on behalf of the County. The holdings in *Wilkinsburg,* and the case cited therein, *Marson v. City of Philadelphia,* 342 Pa. 369, 21 A.2d 228 (1941), rest on the premise that one political body cannot *command* another political body of equal or greater stature to perform an act, such as collecting taxes. This rationale does not apply to a corporation like Grant Oliver, however, especially since it is undisputed that the School District can impose the tax collecting duty on other operators of private parking facilities within the School District. *See Wilkinsburg.* Thus, whether Grant Oliver is viewed as an independent contractor or as an agent or employee of the County, the tax-collecting duty mandated by the Resolution is not altered.[4]

---

[4] Grant Oliver's citation to *Commonwealth v. Philadelphia Gas Works,* 484 Pa. 60, 398 A.2d 942 (1979) is inapposite. In that case, the Commonwealth sought to compel the Philadelphia Gas Works (PGW), a collection of facilities owned by the City of Philadelphia but managed by a private company, to *pay* a liquid fuels tax on its purchases of fuel for city-owned vehicles used in PGW's operations. The Supreme Court held that PGW was entitled to claim the City's exemption from the liquid fuels tax because PGW was an "integral part of a political subdivision." *Id.* at 65, 398 A.2d at 945. Unlike the case at bar, *Philadelphia Gas Works* did not concern an attempt by one political subdivision to compel an independent contractor, agent or employee of another to *collect* the former's tax; *Philadelphia Gas Works* was only concerned with an attempt to collect a tax on liquid fuels which were consumed *by the City,* a political subdivision exempt from paying the tax.

In its opinion, the trial court also ruled that, regardless of its status in relation to the County, Grant Oliver could not be liable for collecting and paying the parking tax to the School District for the period between the enactment of the Resolution in 1979 and the Supreme Court's 1982 decision in *Airway Arms,* upholding the constitutionality of the Resolution. Again, we must disagree.

The trial court relied upon both a legal and an equitable basis for its decision. The legal basis goes back to its order of June 8, 1979, when it held that the Resolution was unconstitutional. Prior to the effective date of the Resolution, but after its passage, Grant Oliver and the other petitioners to the initial challenge sought and received a supersedeas, which was by agreement continued until thirty days after the trial court's decision on the merits. After finding the Resolution to be unconstitutional, the court enjoined the School District and the parking lot operators (including Grant Oliver) from attempting to enforce the Resolution or collect the parking tax from parking patrons. In the instant case, the trial court held that, because the School District never moved to suspend the injunction pursuant to Pa. R.A.P. 1732(a),[5] the injunction continued until our Supreme Court's decision in *Airway Arms.*

We are constrained to agree with the School District, however, that this ruling was erroneous. Under Pa. R.A.P. 1736(a), a political subdivision, like the

---

[5] Pa. R.A.P. 1732(a) states:

Application for a stay of an order of a lower court pending appeal, or for approval of or modification of the terms of any supersedeas, or for an order suspending, modifying, restoring or granting an injunction during the pendency of an appeal, or for relief in the nature of preemptory mandamus, must ordinarily be made in the first instance to the lower court. . . .

School District, is exempted from posting security on appeal. More importantly, Pa. R.A.P. 1736(b) states, and the official note following instructs:

> *(b)  Supersedeas automatic.*  Unless otherwise ordered pursuant to this chapter the taking of an appeal by any party specified in Subdivision (a) of this rule shall operate as a supersedeas in favor of such party.
>
> ˉ *Note:* This rule is self-executing, and a party entitled to its benefits is not required to bring the exemption to the attention of the court under Rule 1732 (application for stay or injunction pending appeal). However, the appellee may apply under Rule 1732 for elimination or other modification of the automatic supersedeas or under Rule 1737 (objections to security) for an order requiring security as a condition to the continuance of the stay, or for relief under any other applicable provision of this chapter.

Thus, when the School District appealed the June 8, 1979 order to this Court, an automatic supersedeas as to the entire order was effectuated, including the injunction. *See School District of the Borough of Aliquippa v. Pennsylvania State Education Association,* 33 Pa. Commonwealth Ct. 202, 381 A.2d 1005 (1977) (indicating that automatic supersedeas applies to entire order). Accordingly, Grant Oliver was not enjoined from collecting the parking tax after the School District filed its appeal, and cannot be excused from liability on this ground.

In addition, relying upon equitable principles, the trial court ruled that the doctrines of equitable estoppel and laches barred the School District from asserting its claim for taxes from Grant Oliver for the 1979-1982 period. Again, we must disagree.

Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which

another was induced by words or actions to expect. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983). The estoppel arises when a party intentionally or negligently misrepresents a material fact, knowing or having cause to know that another will rely on the misrepresentation, and that the other justifiably relies upon the misrepresentation to his detriment. *Brog Pharmacy v. Department of Public Welfare,* 87 Pa. Commonwealth Ct. 181, 487 A.2d 49 (1985). The elements of estoppel must be proven by clear and convincing evidence, *Sepko Appeal,* 84 Pa. Commonwealth Ct. 359, 479 A.2d 665 (1984), with the critical elements being misrepresentation and justifiable reliance. *Siskind.*

Grant Oliver argues that because the School District made no effort to collect the tax prior to 1982, it must be estopped from attempting to collect the tax for the period during which Grant Oliver was challenging the Resolution in court. In particular, Grant Oliver points out that, prior to this time, the School District never appointed a tax collector, promulgated regulations, or sent out tax registration and report forms. Furthermore, Grant Oliver notes two letters it received from the School District: one, dated June 20, 1982 and signed by the newly-appointed tax collector, stated that in light of the *Airway Arms* decision, the Resolution "will take effect immediately"; the other, dated July 8, 1982, and also signed by the tax collector, stated that the "first" tax report was due on August 15, 1982. Grant Oliver contends that the School District's inaction until June 1982, together with the two letters, amounted to a material misrepresentation upon which it justifiably relied.

Even assuming the School District's silence before June 1982, along with the letters, constituted a misrepresentation, it strains credulity to believe that Grant Oliver could reasonably rely thereon so as to forego its

tax collecting responsibilities between 1979 and 1982. At no time did the School District ever indicate that it would not seek back taxes from the date of the Resolution. Instead, Grant Oliver apparently made a calculated business decision not to collect the tax during the period in question. Accordingly, even if we accept that the School District through its inaction made a material misrepresentation, we cannot say that any reliance thereon by Grant Oliver was justifiable. Thus the doctrine of equitable estoppel cannot apply.

By the same token, laches cannot bar the School District's effort to collect back taxes, either. In order for laches to apply, it must be shown that an inordinate and inexcusable delay by the School District in asserting its claim resulted in prejudice to Grant Oliver. *Farrell Area School District v. Deiger,* 88 Pa. Commonwealth Ct. 431, 490 A.2d 474 (1985).

Grant Oliver argues that the School District's inaction until 1982, coupled with Grant Oliver's belief that the trial court's June 8, 1979 order prohibited it from collecting the tax, led it not to collect the tax, and that it would now be unjust to require it to pay the tax to the School District. This argument is without merit. The School District's failure to take steps to enforce the Resolution did not cause Grant Oliver not to collect the tax; if anything, Grant Oliver's decision was based on its mistaken reliance on an injunction that was superseded by the School District's initial appeal to this Court. Therefore, laches is inapplicable here, and cannot bar the School District's claim. Furthermore, Grant Oliver admittedly was an independent contractor until October 1981, and even its claim of agency on behalf of the County would be denied to it until that time.

In light of the foregoing, the decision of the Court of Common Pleas of Allegheny County is reversed and the case is remanded to the trial court for an accounting of the tax monies due the School District.

ORDER

Now, July 14, 1987, the order of the Court of Common Pleas of Allegheny County, No. G.D. 83-11517 dated September 11, 1986 (denying the School District's motions for post-trial relief) is hereby reversed; the order of the Court of Common Pleas of Allegheny County, No. G.D. 83-11517 dated October 21, 1986 (denying the application of the School District to post a tax collector at the airport and to collect monies held in escrow) is vacated, and the case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

Judge BARRY did not participate in the decision in this case.