**William ROLICK, Plaintiff,**

v.

**COLLINS PINE COMPANY and Collins Pine Company, t/d/b/a Kane Hardwood Division, Defendants.**

**Civ. A. No. 87–5 ERIE.**

United States District Court,
W.D. Pennsylvania.

March 9, 1989.

---

Daniel Berger, Pittsburgh, Pa., for plaintiff.

Edward Schmidt, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

MENCER, District Judge.

This case arises out of an accident occurring at a logging site in Allegheny National Forest. A dead birch tree fell and struck William Rolick, injuring him severely. The defendants have filed a motion for summary judgment based on assumption of risk and tort immunity under the Pennsylvania Workmen's Compensation Act, 77 P.S. § 1 *et seq.* This motion is presently before this court.

### 1. *Facts*

In August, 1983, the defendants (Kane Hardwood) and the United States Department of Agriculture, Forest Service (Forest Service) entered into a Timber Sale Contract. Under the terms of this contract, the Forest Service agreed to sell timber to Kane Hardwood and to allow Kane Hardwood to cut and remove that timber from a specified tract of land.

In October, 1983, Kane Hardwood entered into a Logging Services Agreement with Nortim Corporation (Nortim) under which Nortim would perform logging operations for Kane Hardwood as a subcontractor. The agreement authorized Nortim to hire independent subcontractor loggers to cut and haul the timber. Nortim agreed to monitor the loggers, to secure worker's compensation insurance for the loggers, and to teach and monitor safety practices.

Nortim subsequently entered into a Cutting and Hauling Agreement with William Rolick (Rolick). Under this agreement, Rolick was to cut and haul the trees designated by Nortim. The agreement stated that Rolick was a contractor and described the relationship as follows:

Contractor shall supply all labor, tools and equipment required in the performance of this Contract, and shall provide all fuel, oil, grease, accessories, repairs and other items required in the operation of such tools and equipment. Contractor shall have the sole right to hire, fix the wages and hours of, supervise, discipline and discharge its employees, free from interference, direction, or control by Nortim, and shall be solely responsible for the methods used and the manner in which all obligations of the Contractor hereunder are fulfilled. It is the intention of Nortim and of Contractor that under no circumstances whatever shall Contractor, his employees, his subcontractors or their employees be considered employees of Nortim for any purpose.

Appendix to Defendant's Motion for Summary Judgment and Brief in Support Thereof, Exh. D, ¶ 9.

In January, 1985, Rolick was felling maple trees pursuant to the agreements. One or two of the maple trees allegedly landed on a birch tree, causing the birch tree to become "disturbed." Rolick allegedly examined the birch tree, then decided it was safe to continue working near the tree. When he felled a cherry tree located down hill from the birch, the impact of the cherry tree seems to have caused the birch tree to fall. The birch tree landed on Rolick, causing him severe injuries.

### 2. *Legal Analysis*

A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if, upon a review of the materials properly before the court, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted in spite of some alleged factual disputes between the parties because Rule 56(c) requires only that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a court must view the evidence in the

light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983), the court must grant summary judgment "against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2727 (Supp.1987).

## B. Statutory Employers

■ In general, the Pennsylvania Workmen's Compensation Act (the Act) is designed to provide benefits to injured employees regardless of fault. Employers bear the cost of much of these benefits, and in exchange are immune from tort liability for work related accidents to employees. *See, e.g., Kohler v. United States,* 602 F.Supp. 747, 748 (W.D.Pa.), *aff'd,* 779 F.2d 43 (3d Cir.1985); *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983).

■ Although the Act typically applies to employers and employees, it also applies to certain contractors and subcontractors. When a contractor qualifies for the responsibilities and immunities under the Act, it is described as a "statutory employer." In *McDonald v. Levinson Steel Co.,* 302 Pa. 287, 294–95, 153 A. 424 (1930), the Pennsylvania Supreme Court listed five elements necessary to establish one's status as a statutory employer:

> (1) An employer who is under contract with an owner or one in the position of an owner. (2) Premises occupied by or under the control of such employer. (3) A subcontract made by such employer. ■ Part of the employer's regular business intrusted to such subcontractor. (5) An employee of such subcontractor.

*Id.* at 153 A. 426. These five factors are cumulative; the defendant's failure to establish any of these elements will preclude summary judgment. *Id.*

Under the analysis set forth in *Mc-Donald,* Kane Hardwood is allegedly the employer in the first factor and the Forest Service is the owner. Nortim is allegedly the subcontractor, performing logging services for Kane Hardwood. Rolick is allegedly Nortim's employee. We must examine each of these links in the statutory employer chain to determine whether there is a genuine issue of fact.

Rolick asserts that there is a genuine issue of fact as to his status as an employee of Nortim. Rolick cites the explicit language in the Cutting and Hauling Agreement defining his status as an independent contractor, not as an employee. He notes that the language includes an express disclaimer of Nortim's right to control Rolick's work and the statement that, "It is the intention of Nortim and of Contractor that under no circumstances whatever shall Contractor, his employees, his subcontractors or their employees be considered employees of Nortim for any purpose."

■ Initially, we note that the mere labeling of Rolick as an independent contractor in the Agreement does not determine his legal status. *Swartz v. Eberly,* 212 F.Supp. 32, 34 (E.D.Pa.1962); *Capozzoli v. Stone & Webster Engineering Corp.,* 352 Pa. 183, 42 A.2d 524 (1945). The court must make an independent evaluation of the terms of the contract and of all of the surrounding circumstances. *Swartz* at 212 F.Supp. 34; *Capozzoli* at 42 A.2d 525.

■ The focus of the employee/independent contractor distinction is the right to control the manner in which the work is to be performed. *Moon Area School Dist. v. Garzony,* 107 Pa.Cmwlth. 375, 529 A.2d 540 (1987). The hallmark of a master-servant relationship is that the master not only controls the results, but the manner in which that result may be accomplished. *Longo v. Pennsylvania Elec. Co.,* 618 F.Supp. 87, 90 (W.D.Pa.1985), *aff'd,* 856 F.2d 183 (3d Cir.1988). The hallmark of an independent contractee-contractor relationship is that the contractee has exclusive control of the manner of performing the work. *Id. See also George v. Nemeth,* 426 Pa. 551, 233 A.2d 231 (1967).

■ Although the amount of control is clearly the primary consideration in deter-

mining a worker's status, Pennsylvania courts also consider other factors. These include the terms of the agreement, which party supplies tools and equipment, whether the work is part of the employer's regular business, and the right to terminate the relationship at any time. *Moon Area School Dist. v. Garzony*, 107 Pa.Cmwlth. 375, 529 A.2d 540 (1987).

█ Under the analyses outlined above, this court finds that there are genuine issues of material fact. The terms of the agreement delegate large amounts of control to Rolick, including hiring and paying employees and providing tools and equipment. These terms are more indicative of an independent subcontractor-contractee relationship than of a master-servant relationship. Although Kane Hardwood cites instances of actual exercises of control by Nortim, its assertions are factual and contested. Because Kane Hardwood has the burden of establishing each of the elements, our analysis ends here. We will not grant Kane Hardwood's motion based on its status as a statutory employer.

C. Assumption of Risk

Kane Hardwood asserts as an affirmative defense that Rolick assumed the risk of his injury. The status of the assumption of risk doctrine is uncertain in Pennsylvania. In *Rutter v. Northeastern Beaver City School District*, 496 Pa. 590, 613–16 n. 6, 437 A.2d 1198, 1209–11 n. 6 (1981), a plurality of the court abolished the doctrine of assumption of risk except where explicitly preserved by statute or in cases of express assumption of risk. The Court found that certain applications of the assumption of risk doctrine conflicted with the policy considerations reflected in Pennsylvania's switch to comparative negligence, and felt that other available defenses adequately protected defendants. *Id.*

Because a majority of the Court did not join the opinion in *Rutter*, subsequent courts have continued to apply the assumption of risk doctrine, albeit with caution. *See, e.g., Johnson by Johnson v. Walker*, 376 Pa.Super. 302, 545 A.2d 947, 979 (1988); *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 533 (1988). In its most recent opinion in this area, the Supreme Court seemed to adopt the reasoning in *Rutter*, but acknowledged that assumption of risk tenuously remains viable. *Carrender v. Fitterer*, 503 Pa. 178, 189 n. 6, 469 A.2d 120, 125 n. 6 (1983).

█ At present, therefore, it seems that Pennsylvania courts continue to apply the assumption of risk doctrine. Sitting in diversity, this court will apply the doctrine within the parameters of recent state court opinions.

In *Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 533 (1988), the court described the circumstances under which a defendant could escape liability under assumption of risk principles. Citing *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983), the court wrote that before a plaintiff is said to have assumed a risk, he must fully understand the specific risk and voluntarily choose to encounter it under circumstances manifesting his willingness to accept the risk. *Id.* at 542 A.2d 533.

█ Normally, the question of whether the plaintiff understood and appreciated the risk is reserved for the jury. *Carrender v. Fitterer*, 503 Pa. 178, 189 n. 6, 469 A.2d 120, 125 n. 6 (1983); *Verna v. Lopresti*, 157 Pa.Super. 163, 42 A.2d 170 (1945). Where reasonable minds could not differ, however, the court may resolve the issue. *Carrender* at 469 A.2d 124.

Kane Hardwood relies principally on two affidavits to support its argument that, as a matter of law, Rolick assumed the risk of his injury. The Federal Rules of Civil Procedure provide that a movant may support a motion for summary judgment with proper affidavits. Fed.R.Civ.P. 56. The Rules require that "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e).

█ Compliance with Rule 56(e)'s requirements for affidavits is essential if the

court is to consider the evidence contained therein. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2738. "Affidavits which contain conclusions of law, ultimate facts, assertions, arguments and inferences derived from the opposing party's affidavits similarly may be 'disregarded.'" *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D.Pa.1980), *aff'd*, 659 F.2d 1065 (3d Cir.1981).

Rolick asserts that this court should not rely on the affidavits because they fail to meet the requirements of Rule 56(e). He asserts that they are based on information and belief, not on first hand knowledge, and that they contain inadmissible hearsay.

The first affidavit submitted in support of Kane Hardwood's motion is by Michael Ondik (Ondik), a Safety Education Director at the Pennsylvania Forestry Association. Appendix to Defendant's Motion for Summary Judgment and Brief in Support Thereof, Exh. E. Essentially, the affidavit attests to the truth and accuracy of the attached deposition transcript.

■■■ Large portions of the deposition testimony either contain hearsay or relate second hand, unsubstantiated information. After reviewing the transcript, we find that only certain portions are appropriate for consideration of the pending motion for summary judgment. We will ignore the portion on pages 3–4 describing what Tim McHugh told Ondik, the portions on page 9 relaying what Tim McHugh and Jamie Grubbs told Ondik, and the portion on page 13 describing what Ondik believed Rolick said to unknown third parties.

The second affidavit is by Timothy Mague (Mague), a district forester for Kane Hardwood. Appendix to Defendant's Motion for Summary Judgment and Brief in Support Thereof, Exh. E. We find similar admissibility problems with the attached deposition and will ignore the portions referring to statements by Rolick's brother on page 5. It is unclear to the court whether the statement on lines 7–10 were based on a conversation with Rolick himself or with his brother, in light of his statement on lines 14–17 and his statement

on page 10. Therefore, we will also ignore that statement.

■■■ When the admissible evidence is applied to the test for assumption of risk, it is clear that the evidence falls far short of proving as a matter of law that Rolick knew and appreciated the nature of the risk and voluntarily accepted that risk. Therefore, we will not grant the motion for summary judgment based on assumption of risk.

### D. No Duty

■■■ The "no duty" doctrine is very similar to the assumption of risk doctrine, and potentially applies to the facts of this case. *See generally Berman v. Radnor Rolls, Inc.*, 374 Pa.Super. 118, 542 A.2d 525, 533 (1988). The typical no duty case involves a possessor of land defendant and a business invitee plaintiff. *Id.* 542 A.2d at 531. The doctrine provides that a land possessor has no duty to protect a business invitee from known or obvious hazards. *Id.* A hazard is known to the invitee if he knows it exists and recognizes and appreciates the probability and gravity of the threatened harm. *Id.* An obvious danger is one for which both the condition and the risk would be recognized by a reasonable man in the position of the invitee. *Id.* 542 A.2d at 531–32. For the same reasons that we found genuine issues of fact as to the assumption of risk defense, we find genuine issues of fact as to the no duty defense. The obviousness of the risk and the probability and gravity of the danger simply are not sufficiently established to warrant summary judgment.