**Daryl COHEN, Plaintiff,**

v.

**SALICK HEALTH CARE, INC., Defendant.**

**Civ. A. No. 89–9025.**

United States District Court, E.D. Pennsylvania.

Aug. 29, 1991.

Sidney R. Gold, Lovitz and Gold, Philadelphia, Pa., for plaintiff.

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

The defendant, Salick Health Care, Inc. ("Salick"), moves the Court to grant summary judgment in this diversity action filed by the plaintiff, Daryl Cohen, formerly an employee of Salick. In her complaint, Ms. Cohen alleges that Salick wrongfully terminated her employment in retaliation for her protesting against and threatening to report wrongdoing on the part of Salick to Temple University ("Temple"), with whom Salick contracted to operate and manage a Comprehensive Cancer Center in North Philadelphia.

Ms. Cohen alleges in Count One of her complaint that her termination violated the Pennsylvania Whistleblower Law, 43 Pa. S.A. § 1421 *et seq.* She also alleges in Count One that her discharge violated a clear mandate of public policy, created by the Pennsylvania Whistleblower Law, which precludes an employer from discharging an employee for reporting the unlawful activities of her employers. In Count Two, Ms. Cohen alleges that her termination breached her oral contract of employment with Salick under which she could be terminated only for just cause, and, in Count Three, she alleges that Salick fraudulently induced her to leave her prior employment by misrepresenting to her that she would be eventually appointed as executive director of a Salick facility. Ms. Cohen subsequently dropped Count Three. (See Final Pre-trial Order, Part IV).

In its motion for summary judgment, Salick contends that it is entitled to summary judgment on the grounds that (1) the Pennsylvania Whistleblower Law is inapplicable to this case, (2) Ms. Cohen was an at-will employee and that the "public policy exception" to the employment at-will doctrine is not applicable to her, and (3) Salick terminated Ms. Cohen's employment for legally adequate reasons.

■ Summary judgment is proper only where the moving party demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Williams v. Delta Truck Body Co.*, 892 F.2d 327 (3d Cir.1989). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Floyd v. Lykes Bros. S.S. Co.*, 844 F.2d 1044, 1045 (3d Cir.1988). In considering a defendant's motion for summary judgment, "the judge must ask ... not whether ... the evidence favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.... The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The material facts concerning which no genuine issues have been raised may be summarized as follows:

Salick Health Care, Inc., is a for-profit corporation existing under the laws of the State of California, with its principal place of business in Beverly Hills, California. Salick is in the business of operating and managing hospital-based out-patient cancer treatment centers throughout the nation. Its stock is publicly owned and traded. Salick maintains its own payroll and personnel policies, and makes its own hiring and firing decisions. (Affidavit of Robert Scanlon, Defendant's Ex. W).

On or about September 30, 1988, Temple University entered into a contract with Salick under which Salick contracted to operate and manage an out-patient Comprehensive Cancer Center at Temple University Hospital in North Philadelphia. In the Management Agreement with Temple University, the relationship between the parties is specifically characterized as "that of independent contractor and not partners or joint venturers." (Management Agreement, Plaintiff's Ex. P, p. 10).

Prior to Salick and Temple entering into the Management Agreement, Salick employees Nancy Bookbinder and Kathy Bowing, nationally recognized experts in onco-

**1524**

logical demographics and feasibility studies, prepared feasibility studies in connection with the creation of a cancer center at Temple University Hospital. The studies prepared by Ms. Bookbinder and Ms. Bowing contained patient load projections for the proposed cancer center over a five-year period. Once completed by Ms. Bookbinder and Ms. Bowing, the studies were forwarded to two other Salick employees, Anthony LaMacchia and Mike Fiore, who used the studies to prepare financial pro formas designed to reflect anticipated revenues from the cancer center. Apparently to make the cancer center a more attractive proposition to Temple, Mr. LaMacchia and Mr. Fiore tripled the optimal patient load projections prepared by Ms. Bookbinder and Ms. Bowing and then directed Ms. Bookbinder to approve the inflated figures. Ms. Bookbinder refused to do so, and sent a memorandum to various personnel at Salick in defense of her original, lower projections. Nevertheless, in June of 1987, the LaMacchia/Fiore figures were sent to Temple and formed a basis for the September 30, 1988 agreement between Salick and Temple regarding the Comprehensive Cancer Center.

Subsequently, in March of 1989, Ms. Cohen was hired by Salick as Operations Manager for the Comprehensive Cancer Center. No written employment contract existed between Salick and Ms. Cohen; however, in discussions with Mr. Robert Scanlon, Salick's Vice–President of the Mid–Atlantic Region, Mr. Scanlon *inter alia* stated that:

all things considered, unless there was any cause for dismissal, unless there was a problem with [her] job performance, that she would be [with Salick] and [she] would be a success.

and that:

it absolutely [a secure position], unless for some reason, for cause, there's no other reason.

(Cohen depo., Plaintiff's Ex. L & M). During her employment, Ms. Cohen was under the immediate supervision of Mr. Scanlon.

Shortly after being hired, Ms. Cohen was approached by Temple personnel with inquiries as to how Salick intended to reach the projections contained in the feasibility and financial studies. Ms. Cohen contacted Mr. Scanlon regarding Temple's inquiries and its requests for more information on feasibility and financial projections. Mr. Scanlon instructed Ms. Cohen that he would "handle the situation" and that she should not turn over additional information to Temple or its representatives.

Ms. Cohen eventually learned from Ms. Bookbinder that the studies given to Temple did not contain Ms. Bookbinder's projections, but rather the inflated projections of Mr. LaMacchia and Mr. Fiore. Ms. Cohen approached Mr. Scanlon and voiced concern over the figures presented to Temple. Scanlon advised her that he did not want her to have anything more to do with the feasibility studies and that if she continued to put pressure on him regarding those studies her employment with Salick could be in jeopardy.

In July of 1989, however, Ms. Cohen again approached Mr. Scanlon and informed him that she was adamantly opposed to concealing or withholding the "real numbers" from Temple and would not take part in it. She told him it was her intention to advise Temple that the figures supplied to it by Salick had been inflated if he did not release the original studies. Scanlon again advised her that if she did so her employment would be in jeopardy.

That same month, Ms. Cohen took it upon herself to inform Mr. Jacobs, a Temple representative, of the inflations in the feasibility studies presented to Temple. Concerned about her future with Salick, she requested Mr. Jacobs to take no action and told him she would attempt to resolve the situation herself. Ms. Cohen then contacted Salick's Director of Human Resources, Ms. Barbara Blanchard, as well as Dr. Bernard Salick, the President of Salick, and explained her concerns regarding the feasibility studies. Neither Dr. Salick nor Ms. Blanchard intervened on Ms. Cohen's behalf, and on September 1, 1989, she was discharged from her employment with Salick.

The Court's jurisdiction in this case is by virtue of diversity of citizenship between the parties. The parties contend and the

Court agrees that Pennsylvania substantive law is applicable. When confronted with issues not yet addressed by the Supreme Court of Pennsylvania, this Court is "required to 'predict the position which that court would take in resolving this dispute.'" *Smith v. Calgon Carbon Corporation,* 917 F.2d 1338, 1341 (3d Cir.1990), *cert. den.,* ⎯ U.S. ⎯, 111 S.Ct. 1597, 113 L.Ed.2d 660, *quoting Robertson v. Allied Signal, Inc.,* 914 F.2d 360 (3d Cir. 1990).

## I. Pennsylvania Whistleblower Law

■ The first issue presented by Salick's motion for summary judgment is whether the facts concerning which there are no genuine issues come within the ambit of the Pennsylvania Whistleblower Law. Specifically, Salick contends (1) that it is not an "employer" and Ms. Cohen is not an "employee" as defined by the statute, on the ground that Salick is not a "public body" under the statute and is not "funded in any amount by or through the Commonwealth or political subdivision authority", and (2) that there was no agency relationship between Temple and Salick that would make the Whistleblower Law applicable to Salick.

On the other hand, Ms. Cohen contends (1) that Salick is an "employer" by virtue of an agency relationship with the Temple, and (2) Ms. Cohen is an "employee" as defined by the statute on the ground that Salick is a "public body" in that it is "funded in any amount by or through the Commonwealth or political subdivision authority" by virtue of its receipt of Medicaid reimbursements through Temple University.

The relevant substantive prohibition of the Pennsylvania Whistleblower Law is found at 43 Pa.S.A. § 1423(a) and reads as follows:

(a) **Persons not to be discharged.**— No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

"Employer" is defined in 43 Pa.S.A. § 1422 of the Whistleblower Law:

**"Employer."** A person supervising one or more employees, including the employee in question; a supervisor of that supervisor; or an agent of a public body.

"Employee" is defined in that same section as follows:

**"Employee."** A person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body.

"Public body" is defined under 43 Pa.S.A. § 1422 as follows:

**"Public body."** All of the following:

(1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.

(2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.

(3) *Any other body* which is created by Commonwealth or political subdivision authority or *which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.* [emphasis added]

The issue which this Court must determine is whether Ms. Cohen was performing "a service for wages or other remuneration under a contract of hire, written or oral, express or implied, for a public body", i.e., whether Salick is a "public body" under the Whistleblower Law.

As no Pennsylvania appellate court has yet interpreted the Pennsylvania Whistleblower Law, the Court first turns to the legislative history of the law in an effort to determine the meaning of "public body". The language and legislative history of the Whistleblower Law demonstrate the legislature's intent to limit application of the

statute to bodies "funded in any amount by or through the Commonwealth or political subdivision authority or a member or employee of that body". It is clear that the legislative intent was to make the law applicable to bodies that receive even one dollar of state funding. Pa.Legis.J.—House, June 18, 1985, pp. 1230–32, 1277. However, there is no mention in the legislative history as to what is meant by "funded". This Court must therefore predict how the Supreme Court of Pennsylvania would interpret the language "funded in any amount by or through Commonwealth or political subdivision authority."

As stated, Ms. Cohen contends that Salick is "funded by or through" the Commonwealth of Pennsylvania and is therefore a "public body" by virtue of its receipt of Medicaid reimbursements from the Commonwealth through Temple, in payment for services rendered to Medicaid eligible patients. She also contends that Salick is an employer under the Whistleblower Law by virtue of an agency relationship with Temple University.

Title XIX of the Social Security Act, enacted in 1965, establishes the joint state-federal Medicaid program in which the federal government reimburses participating states for a percentage of the cost of providing medical care to indigent persons. 42 U.S.C. § 1396 et seq. (1988); *see Commonwealth, Dept. of Public Welfare v. U.S. HHS*, 928 F.2d 1378 (3d Cir.1991). The Medicaid program "authorizes federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependant children or qualified pregnant women or children." 42 C.F.R. § 430.0 The program is jointly financed by the Federal and State governments and administered by States. Within broad federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative and operating procedures. In Pennsylvania, Medicaid is administered through the Commonwealth's Medical Assistance Program by the Department of Public Welfare. Payments for services are made directly by the State to the individuals or entities that furnish the services.

In his deposition, Robert H. Lux, associate vice-president for hospital finance at Temple University Hospital, explained the channels through which Medicaid funds eventually make their way to Salick. (Lux depo., Plaintiff's Ex. J). When the Comprehensive Cancer Center treats patients who are Medicaid eligible, the bills for such treatment are submitted to the state through Temple University, using Temple's provider number. The Medicaid reimbursement for treatment rendered is then made to Temple, which in turn remits to Salick whatever amount represents payment for treatment rendered by Salick. Ms. Cohen contends that Salick's receipt of Medicaid reimbursements satisfies the state funding requirement of the Pennsylvania Whistleblower Law, therefore making Salick a "public body" under that law. The Court disagrees.

The Court predicts that the Supreme Court of Pennsylvania will not interpret the Pennsylvania legislature's use of the words "funded by or through" to mean that the receipt of Medicaid reimbursements is sufficient to bring it within the definition of a "public body" under the Pennsylvania Whistleblower Law. Such an interpretation would extend the reach of the Whistleblower Law to every hospital, nursing home, institution for the mentally retarded, institution for the mentally ill, home health care provider, physician, chiropractor, podiatrist, ambulance company, dentist, and optometrist that treats patients whose medical expenses are reimbursed by Medicaid. Doctors, nursing homes, and other health care providers are not the intended beneficiaries of the Medicaid program. *Koerpel v. Heckler*, 797 F.2d 858, 864 (10th Cir.1986); *Geriatrics, Inc., v. Harris*, 640 F.2d 262, 265 (10th Cir.), *cert. den.* 454 U.S. 832, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). "Instead, the purpose underlying the [Medicaid] funding program is to extend financial benefits to the patients eligible to receive their medical care at government expense." *Geriatrics*, 640 F.2d at 265, *citing* 42 U.S.C. § 1395a. Through Medicaid, health care providers

merely receive payment for services rendered to Medicaid eligible patients. Although there is no question that many doctors and other health care providers receive "funds" for services rendered to Medicaid eligible patients, it was clearly not the intention of the Pennsylvania legislature to include them as funded public bodies under the Whistleblower Law.

It is abundantly clear that the legislature did not intend that the mere receipt of monies from a state source for services rendered should bring the recipient within the Whistleblower Law. The money received by Salick from the Commonwealth through Temple was in payment for services rendered to Medicaid eligible patients and does not therefore make Salick a "public body" under the statute.

This Court will not distort the Whistleblower Law in such a way as to extend its remedies beyond their intended purpose. Rather, the words "funded by or through" must be construed with reference to and in concert with the statute as a whole. *See Snyder v. Commonwealth, Department of Transportation*, 64 Pa.Cmwlth. 599, 441 A.2d 494 (1982). In the Whistleblower Law, the use of the words "funded by or through" suggest a specifically appropriated amount of State funds to a public body. The language "funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body" was intended by the legislature to be limited to monies which were appropriated by the legislature for the purpose of aiding "public bodies" in pursuit of their public goals. This language was obviously not intended to make an individual or corporation a "public body" solely on the basis that monies were received by it from the state as reimbursement for services rendered.

■ This Court agrees with Judge Shapiro that, when construed as a whole, "[t]he Whistleblower Law protects from retaliation *public* employees who make a good faith report about an instance of wrongdoing or waste to an employer or appropriate authority." *McDonald v. McCarthy*, 1990 W.L. 131393, 1990 U.S.Dist.LEXIS 11957 (E.D.Pa.1990) (emphasis added). Ms. Cohen was not a public employee.

■ Ms. Cohen also contends that Salick comes within the definition of an "employer" under the Whistleblower Law on the ground that Salick has an agency relationship with Temple University, and Temple is funded by the Commonwealth.

Salick is a for-profit corporation organized under the laws of the state of California. Its stock is publicly owned and traded. In the Management Agreement with Temple University, the relationship between the parties is specifically characterized as "that of independent contractor and not partners or joint venturers." Salick maintains its own payroll and personnel policies, and makes its own hiring and firing decisions.

Agency is defined in § 1 of the Restatement (2d) of Agency as follows:

Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.

The plaintiff, Ms. Cohen, contends that an independent contractor is deemed to be an agent of its principal. Under Pennsylvania law, it has been expressly stated that not all independent contractors are agents. *Commonwealth v. Minds Coal Mining Corp.*, 360 Pa. 7, 17, 60 A.2d 14 (1948), *cited with approval by Moon Area School District v. Garzony*, 522 Pa. 178, 189, n. 8, 560 A.2d 1361, 1367 n. 8 (1989).

Section 2(3) of the Restatement (2d) of Agency defines an independent contractor as follows:

(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent.

The plaintiff, Ms. Cohen, has failed to bring to this Court's attention, by affidavit, deposition, answer to interrogatory, or ad-

mission, any evidence showing that the relationship between Salick and Temple is that of principal and agent. On the other hand, with its motion for summary judgment, Salick has provided the Affidavit of Robert Scanlon (Def. Ex. B) in which he states that in his capacity as Vice President for Planning and Operations of Temple University, prior to being hired by Salick, he was familiar with the type of independent contractor relationship into which Temple and Salick entered. He states that "these contractual relationships occur on a frequent and on-going basis, and are treated by Temple University as contracts between the University and independent contractors who are not subject to the direct control and/or funding of the University." *Id.*

As made clear in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof." The plaintiff cannot rest on the mere allegations of her pleadings. Fed.R.Civ.P. 56. Nothing has been produced in this record to show that Salick is under the control of or subject to the right of control of Temple University with respect to the management of the cancer center. The Court therefore predicts that the Supreme Court of Pennsylvania would not interpret the Whistleblower Law to bring Salick within the definition of a "public body" on the basis of an alleged agency relationship with Temple under these circumstances.

Accordingly, the Court has determined that summary judgment will be granted in favor of the defendant, Salick, and against the plaintiff, Ms. Cohen, on her Pennsylvania Whistleblower Law claim.

## II. Breach of Oral Employment Contract

■ In its motion, Salick next contends that it is entitled to summary judgment on Ms. Cohen's claim that her discharge breached an oral employment contract under which she could only be discharged for cause.

Pennsylvania law, with limited exceptions, has construed employment at-will to allow for termination of the employment relationship, on either parties' part, without cause. As stated by Judge Cowen in *Carlson v. Arnot–Ogden Memorial Hospital:*

> Pennsylvania courts have recognized the doctrine of employment at-will for almost a hundred years. *See Darlington v. General Elec.*, 350 Pa.Super. 183, 188–89, 504 A.2d 306, 309 (1986) (tracing recognition of employment at-will doctrine in Pennsylvania to *Henry v. Pittsburgh & Lake Erie R.R. Co.*, 139 Pa. 289, 21 A. 157 (1891)); *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654 (3d Cir. 1990). Under employment at-will, "employees may be discharged *at any time,* for any reason, or for no reason at all." *Id.* (emphasis added). In Pennsylvania, the at-will presumption can be overcome by a contract, either express or implied, that specifies the duration of employment. *Veno v. Meredith,* 357 Pa.Super. 85, 96, 515 A.2d 571, 577 (1986).

*Carlson,* 918 F.2d 411, 414 (3d Cir.1990).

Ms. Cohen claims in Count Two of her complaint that her termination by Salick breached an oral contract of employment under which she could be terminated only for cause. In support of this claim, Ms. Cohen has submitted excerpts from her deposition in which she states that Mr. Scanlon, Salick's Vice President for the Mid–Atlantic Region, acting on behalf of Salick, entered into an oral employment contract under which she could only be discharged for cause. (Cohen depo., Plaintiff's Ex. L, pp. 191–202, Plaintiff's Ex. M, pp. 5–8). The statements upon which Ms. Cohen relies are as follows:

> A [Ms. Cohen]: ... they said that all things considered, unless there was any cause for dismissal, unless there was some problem with my job performance, that I would be here and I would be a success and they were behind me and they were enthusiastic and it was just a very confirming experience. You're

here, you're part of us, and you won't be leaving here.

\* \* \* \* \* \*

A. Well, he had made me a verbal offer. I wanted all of that in writing.

Q. What did he say about that?

A. ... he said, "Daryl, you can trust me on this one, can't you? What kind of relationship are we going to have if you can't trust me on this one? I don't have a typewriter. And everything I've said to you, you can take to bank"

I said, "Bob, I can't afford to lose"—"I can't afford to be in another position a short period of time. I can't afford emotionally to change jobs anymore, and I want this to be a secure position."

And he said it absolutely is, unless for some reason, for cause, there's no other reason. . . .

\* \* \* \* \* \*

Q. The word "cause" you've used a couple of times. Did you use that word or did he use that word?

A. He used that word.

Q. Did you ask him what he meant by that?

A. No.

Q. Do you know what he meant by that?

A. Yes. We used it with all our employees.

Q. What does it mean?

A. It meant that unless they had specific that you did something wrong or you're some way derelict of your duties or some way causing a problem in your specific job performance, there's a problem with job performance, that you wouldn't be let go.

\* \* \* \* \* \*

A. ... he reiterated. He said, un-less—he was saying it in a very positive way. That you have job security here and we're thrilled to have you and except for cause or problem with your performance, that you will be here and you can expect to be here, and we're happy to have you on board. . . .

Q. Did he tell you about which problems would be or would not be cause?

A. He specifically said problems in my performing my duties.

(Cohen depo., Plaintiff's Ex. L, pp. 191–202, Plaintiff's Ex. M, pp. 5–8).

The Superior Court of Pennsylvania has specifically rejected the contention that statements such as those quoted above are sufficient to overcome the strong presumption of employment at-will. In *Curran v. Children's Service Center*, the Superior Court held that an employee's

> contention that he expected lifelong employment from which he could be discharged only for cause is not alone an adequate basis for overcoming the presumption of employment at-will where the parties have not agreed to a specific term of employment.

*Curran*, 396 Pa.Super. 29, 34, 578 A.2d 8, 10 (1990), *app. den.*, 526 Pa. 648, 585 A.2d 468 (1991).

Ms. Cohen has not alleged that she and Salick agreed to a specific term of employment, but only, as was the case in *Curran*, that she expected employment from which she could only be discharged for cause. Under the Superior Court's holding in *Curran*, Ms. Cohen has not overcome the strong presumption of employment at-will.

Ms. Cohen cites *Robertson v. Atlantic Richfield Petroleum*, 371 Pa.Super. 49, 537 A.2d 814 (1987), for the proposition that a "just cause" provision alone overcomes the presumption of employment at-will. However, *Robertson* supports her position only on the basis of dicta and provides no citation of authority for its dicta. In predicting how the Supreme Court of Pennsylvania would rule on this issue, this Court will rely on Judge Cowen's statement in *Carlson* that:

> In Pennsylvania, the at-will presumption can be overcome by a contract, either express or implied, that specifies the duration of employment.

*Carlson*, 918 F.2d 411, 414 (3d Cir.1990), *citing Veno v. Meredith*, 357 Pa.Super. 85, 96, 515 A.2d 571, 577 (1986).

The burden is on the employee to overcome the presumption that her employment was at-will "by demonstrating 'facts

and circumstance establishing some tenure of employment....'" *Murray v. Commercial Union Ins. Co., (Commercial)*, 782 F.2d 432, 435 (3d Cir.1986), *citing Cummings v. Kelling Nut Co.*, 368 Pa. 448, 84 A.2d 323, 325 (1951). "The burden of proof here is very great." *Schoch*, 912 F.2d at 660, *quoting, DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 424, 539 A.2d 865, 867 (1988).

As the Pennsylvania Superior Court explained in *Veno v. Meredith*,

> ... because of its vitality, courts insist that to contract-away the at-will presumption, much clarity is required. The intention to overcome the presumption will not be unheedingly inferred. This court has recently held that the modification of an "at-will" relationship to one that can never be severed without "just cause" is such a substantial modification that a very clear statement of an intention to so modify is required. *Martin v. Capital Cities Media, Inc.*, [354] Pa.Super. [199], 511 A.2d 830 (1986). Absent this clarity, again, the relationship is "at-will" and a discharge is not reviewable in a judicial forum (absent sufficient evidence of "wrongful discharge").

357 Pa.Super. 85, 99, 515 A.2d 571, 578 (1986).

Accordingly, Ms. Cohen having failed to bring forth affidavits, depositions, answers to interrogatories, admissions, or other evidence sufficient to overcome the employment at-will presumption, the Court will grant Salick's motion for summary judgment on Ms. Cohen's contention that the employment at-will doctrine does not apply to her because she had an oral employment contract with Salick under which she could be discharged only for cause.

## III. Public Policy Exception

■ Finally, Ms. Cohen contends that her discharge comes within the public policy exception to the employment at-will doctrine.

Pennsylvania courts, United States District Courts, and the Court of Appeals for the Third Circuit all recognize the existence of a limited public policy exception to the employment at will doctrine in Pennsylvania. As pointed out by Judge Stapleton in *Smith v. Calgon Carbon Corporation*, 917 F.2d 1338 (3d Cir.1988):

> In *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), however, the Pennsylvania Supreme Court became one of the first courts in the nation to recognize, albeit in dicta, that this established general rule might admit of certain exceptions. *See* Comment, *The Role of Federal Courts in Changing State Law: The Employment At Will Doctrine in Pennsylvania*, 133 U.Pa.L.Rev. 227, 249 (1984).
>
> \*　\*　\*　\*　\*　\*
>
> Despite the court's holding in *Geary*, Pennsylvania courts, federal district courts, and this court have all read *Geary* as creating a limited public policy exception to the employment at will doctrine. Two recent Pennsylvania Supreme Court cases cast some doubt on this interpretation of *Geary*. *See Clay* [*v. Advanced Computer Applications, Inc.*, 522 Pa. 86], 559 A.2d [917] at 923 [ (1989) ] (Nix, C.J., concurring) ("Contrary to the Superior Court's view, this Court did not announce a cause of action for wrongful discharge in *Geary*."); *Paul v. Lankenau Hospital* [524 Pa. 90], 569 A.2d 346–348 (Pa.1990) ("The Court [in *Geary*] specifically answered in the negative the central question of 'whether the time has come to impose judicial restrains on an employer's power of discharge.' "). However, in the absence of a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law, we are bound by the holdings of previous panels of this Court.... On several occasions, this court has held that *Geary* recognized a wrongful discharge tort for discharges that violate a clear mandate of public policy. *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir.1988); *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 (3d Cir. 1983); *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910 (3d Cir.1982);

*Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979).

*Smith,* 917 F.2d at 1342–43.

Although the Pennsylvania Superior Court has considered numerous wrongful discharge cases, it has found the public policy exception applicable in only three cases. *See Field v. Philadelphia Electric Co.,* 388 Pa.Super. 400, 565 A.2d 1170, 1179 (1989) (employee, hired as expert in nuclear safety, discharged for making statutorily required report to NRC); *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (denial of employment to pardoned individual because of his assault conviction violates public policy embodied in Article I, Section 1 of Pennsylvania Constitution); *Reuther v. Fowler and Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978) (termination for absence due to jury duty).

The public policy exception has also been found applicable in *Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699 (3d Cir.1988), where an employee was discharged for refusal to serve liquor to intoxicated patron. In *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894 (3d Cir.1983), the public policy exception was found applicable where an employee was dismissed for his refusal to participate in political lobbying. In *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979), an employee was dismissed for refusal to take a polygraph test. And in *McNulty v. Borden, Inc.,* 474 F.Supp. 1111 (E.D.Pa.1979), this Court found the public policy exception applicable where an employee was dismissed for his refusal to participate in antitrust violations.

■ A review of the above cases makes it clear that the law of Pennsylvania recognizes a public policy exception to the employment at will doctrine; however, it is a limited exception which requires the finding of a "clear mandate of public policy" embodied in a constitutionally or legislatively established prohibition, requirement, or privilege. As the Court of Appeals in *Smith* stated:

> We see little evidence to date that an alleged public interest will be recognized as a "clear mandate of public policy" in the absence of a legislative or constitutional endorsement in the form of a specific prohibition, requirement or privilege.

*Smith v. Calgon Carbon Corporation,* 917 F.2d at 1344.

Ms. Cohen contends that the Pennsylvania Whistleblower Law has created a "clear mandate of public policy embodied in a ... legislatively established prohibition, requirement, or privilege." Specifically, she contends that the Whistleblower Law is a legislatively established prohibition that demonstrates a clear mandate of public policy under Pennsylvania Law prohibiting the termination of employees for reporting the unlawful acts of their employers.

As this Court heretofore determined, the Pennsylvania Whistleblower Law does not apply to Salick because it is not a "public body" as defined by the statute. The Whistleblower Law cannot be said to create a "clear mandate of public policy" in favor of Ms. Cohen since the statute is not applicable to employees, like her, who are not employed by a public body "funded in any amount by or through the Commonwealth or political subdivision authority". This Court agrees with Judge Troutman that the Whistleblower Law is not an expression of a clear mandate of Pennsylvania public policy in favor of the whistleblowing activities of employees of bodies which are not public bodies "funded in any amount by or through the Commonwealth or political subdivision . authority". *See Wagner v. General Electric, Co.,* 760 F.Supp. 1146, 1155 (E.D.Pa.1991). If the Pennsylvania Whistleblower Law can be said to create a "clear mandate of public policy", such a mandate is limited, as is the statute, to employees of public bodies "funded in any amount by or through the Commonwealth or political subdivision authority".

Accordingly, the Court has determined that Ms. Cohen's discharge does not come within the public policy exception to the employment at-will doctrine by virtue of the Pennsylvania Whistleblower Law. She has not alleged any other "clear mandate of public policy embodied in a constitution-

ally or legislatively established prohibition, requirement, or privilege."

The motion for summary judgment of the defendant, Salick Health Care, Inc., will therefore be granted on Ms. Cohen's claim that her discharge was in violation of the public policy exception to the employment at-will doctrine.

For the reasons stated above, the Court will grant the motion for summary judgment of the defendant, Salick Health Care, Inc. as to all of the plaintiff Daryl Cohen's claims, and judgment in this matter will be entered in favor of the defendant, Salick Health Care, Inc., and against the plaintiff, Daryl Cohen.