739 A.2d 571 (1999)
Mary C. DENTON, Appellant,
v.
SILVER STREAM NURSING AND REHABILITATION CENTER and Genesis Health Ventures Inc., Appellees.
Superior Court of Pennsylvania.
Argued July 29, 1999.
Filed October 7, 1999.
*573 Mary C. Denton, appellant, pro se.
Mark Blondman, Philadelphia, for appellees.
Before McEWEN, President Judge, and MUSMANNO and OLSZEWSKI, JJ.
*572 OLSZEWSKI, J.:
¶ 1 Mary Denton appeals the order of the Court of Common Pleas of Montgomery County dismissing her action. For the following reasons, we vacate and remand.
¶ 2 The procedural posture of this case appears complex due to the numerous collateral motions and petitions for relief filed by appellant. Our review of the record, however, reveals the relevant facts and procedures necessary for reaching our decision. On April 17, 1997, appellant was terminated as director of nursing at appellees' nursing care facility. The termination was the culmination of a series of events that involved investigations by the Pennsylvania Department of Health and Human Services (DHHS) into allegations of theft of patients' funds, faulty administrative records, possible theft of medical supplies, and the accidental death of a patient. Appellant had been carrying on a vigorous "clean-up" campaign with management and corporate officials for at least three months previously regarding the abuses and instances of wrongdoing she had recently discovered. On March 17, 1997, she spoke with DHHS investigators regarding the abuses she had observed. On March 28, 1997, she was asked by management to resign her position, but she refused to do so. She alleges that she was subsequently subjected to intense harassment designed to cause her to resign; the harassment instead caused such great emotional turmoil that she found herself seeking psychiatric treatment and being prescribed psychoactive medications. She was eventually discharged from her position on April 17, 1997.
¶ 3 Appellant filed the instant action pro se against appellees on August 12, 1997. In her voluminous complaint, she alleged damages due to violations of the Whistleblower's Act, harassment, two counts of negligence, criminal conspiracy, wrongful discharge, reckless endangerment, wrongful death of a patient, and intentional infliction of mental distress. Appellees filed preliminary objections, which were sustained by the trial court. Appellant then moved for permission to file an amended complaint, which was *574 granted. She filed her amended complaint on May 19, 1998, alleging wrongful termination as being against public policy, negligent infliction of emotional distress, intentional infliction of emotional distress, violation of the Whistleblower's Act, civil conspiracy, violations of the Wage Payment and Collection Law, and violations of her constitutional right to freedom of speech. Appellees again filed preliminary objections, asserting that the complaint in its various counts failed to state a cause of action. At this point, the proceedings become convoluted.
¶ 4 In response to appellees' preliminary objections, appellant filed a second amended complaint as of right pursuant to Pa.R.C.P. 1028(c)(1). The trial court, however, dismissed the second amended complaint "with prejudice" and directed appellant to file an answer to the preliminary objections within ten days. Appellant filed her response and additionally requested leave to file a second amended complaint. The trial court again denied the motion. At that point, appellant appealed to this Court, asserting that the trial court erred by denying her motion to amend her complaint.
¶ 5 While her appeal was being considered by this Court, appellant filed a petition for a stay of proceedings, which was denied; a reapplication for stay, which was granted by another judge and then withdrawn as the matter was on appeal and the court determined it had no jurisdiction to act; a motion for recusal of the judge who had dismissed her second amended complaint, which was denied; a motion for reconsideration of recusal, which was also denied; and various motions seeking to allow her to amend her answer to appellees' preliminary objections to her first amended complaint. In the interim, appellees petitioned this Court to quash the appeal, as the order dismissing the second amended complaint was not a final order. We agreed, and quashed appellant's appeal per curiam on December 7, 1998. The trial court perfunctorily dismissed the action on December 21, 1998. This appeal followed.
¶ 6 The trial court's 1925 opinion does not specify with any particularity what grounds it based its decision on, other than to state that "[n]otwithstanding the detailed manner in which appellant sets forth the facts giving rise to her claims, appellant fails to make allegations which provide her with a legal basis of recovery." Trial court opinion, 12/21/98, at 3. As this is the same argument appellees raised in the preliminary objections, we find that the trial court's order being appealed was the equivalent of an order sustaining preliminary objections to appellant's first amended complaint, and we will treat it on appeal as such.
¶ 7 Appellant asks six questions on appeal:
1. Whether the lower court erred in issuance of the order on appeal;
2. Whether Denton has stated a cause of action in the complaint on which to base an actionable claim;
3. Whether Denton (appellant) should be afforded the opportunity to file an amended complaint in this matter;
4. Whether Denton (appellant) should be afforded the opportunity to amend response to preliminary objections to amended complaint;
5. Whether lower court erred in repeatedly denying Denton (appellant) the opportunity to file an amended complaint; and
6. Whether Denton (appellant) can reasonably receive a fair and impartial determination in the Montgomery County court or whether a change of venue is warranted and necessary.
Appellant's brief, at 3. Questions 3, 4 and 5 are moot due to our determination in this case; questions 1 and 2 strike at the heart of the lower court's order and constitute the essence of our analysis. Question 6 raises an ancillary issue, which will be addressed in turn.
*575 ¶ 8 An appeal from an order granting preliminary objections in the nature of a demurrer is subject to plenary review. Morgan v. McPhail, 449 Pa.Super. 71, 672 A.2d 1359, 1360 (1996). In such review:
we accept as true all well-pleaded material facts in the complaint, as well as all inferences reasonably deducible therefrom. Preliminary objections should be sustained only when it appears with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff.
Id. (citations omitted). "In reviewing the grant of a demurrer, we are not bound by the inferences drawn by the trial court nor are we bound by its conclusions of law. Moreover, the novelty of a claim or theory, alone, does not compel affirmance of a demurrer." Neff v. Lasso, 382 Pa.Super. 487, 555 A.2d 1304, 1305 (1989). It must be remembered that "[e]very cause of action..., however, was once a novel claim, and the absence of Pennsylvania authority for appellant's proposition is not an end to the issue." Papieves v. Kelly, 437 Pa. 373, 263 A.2d 118, 120 (1970). Finally, when a doubt exists as to whether a demurrer should be sustained, we will resolve this doubt in favor of overruling it. Snyder v. Specialty Glass Products, Inc., 441 Pa.Super. 613, 658 A.2d 366, 368 (1995).
¶ 9 In its 1925 opinion, the trial court cited little authority in support of its order. In fact, the trial court's opinion specifically addresses only appellant's initial harassment and intentional infliction of emotional distress claims, and dismisses the rest of the counts under the rubric of a failure "to articulate any cognizable claims in her complaint upon which this court can grant relief." Trial court's opinion, 12/21/98, at 2. We find that the lower court erred in its application of the law to the complaint in a number of specifics.
¶ 10 First, we note that appellant has failed to argue her claim of constitutional deprivation in her brief, nor has the issue been addressed in any of the other briefs submitted to this Court.[1] We are, therefore, not beholden to address it. See Smathers v. Smathers, 448 Pa.Super. 162, 670 A.2d 1159, 1160 (1996) (noting that we will not consider the merits of issues that are not properly raised and developed in appellant's brief). Further, as to appellant's claim of harassment, our review of the record shows that this count was not advanced in appellant's first amended complaint. The trial court's discussion of this issue, therefore, is irrelevant to its determination of appellees' objections to the complaint, and we will not consider it further.
¶ 11 We are compelled, however, to extend to appellant a cause of action based upon the Whistleblower Law. This question comes to us as an issue of first impression. The Whistleblower Law, 43 P.S. § 1423(a), makes it unlawful for a public employer to "discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee or a person acting on behalf of the employee makes a good faith report ... to the employer or appropriate authority an instance of wrongdoing or waste." Id. A person alleging a violation of this statute may bring a civil action within 180 days. 43 P.S. § 1424. Central to resolution of this issue is determining whether appellees are a public employer for purposes of the Whistleblower Law.
¶ 12 Section 1422 of the Law defines an "employer" as "[a] person supervising one or more employees, including the employee in question; a superior of that supervisor; or an agent of a public body." A "public body" is defined, inter alia, as any body created by the Commonwealth or "which is funded in any amount by or through Commonwealth or political *576 subdivision authority or a member or employee of that body." Appellant alleges that appellees receive Medicaid funds through the state and that this qualifies appellees as a "public body" for purposes of the Whistleblower Law. We agree.
¶ 13 Appellees, contrarily, point to the federal district case of Cohen v. Salick Health Care, 772 F.Supp. 1521 (E.D.Pa. 1991), for support of their proposition that mere receipt of Medicaid funds does not qualify an agency as a "public body." In Cohen, the defendant operated an out-patient cancer clinic at Temple University Hospital. The plaintiff alleged that she had been discharged because she threatened to report wrongdoings on the part of Salick. The district court, interpreting state law, held that the Whistleblower Law did not extend to every health care provider "that treats patients whose medical expenses are reimbursed by Medicaid." Id. at 1526. In so finding, the court determined that the statutory language "funded in any amount by or through the Commonwealth" was intended to apply only to funds specifically appropriated by legislative fiat. Id. at 1527.
¶ 14 Our own subsequent and binding state case law directs us to a different conclusion. In Riggio v. Burns, 711 A.2d 497 (Pa.Super.1998), an en banc panel of this Court addressed the question of whether a private medical provider may be a "public body" for purposes of the Whistleblower Law based upon the receipt of public money. The Riggio majority noted the existence of Cohen and also specifically noted that it was not bound by that decision. Id. at 500. The Court found it unnecessary to rule specifically on whether mere Medicaid funding was sufficient to create "public body" status, as the medical provider also received funding by direct legislative appropriation and was thus covered by provisions of the Whistleblower Law. But in reaching its decision, the Riggio Court relied on the clear meaning of the definition of "public body" as set forth in the statute:
However, an attempt to divine the intent of the legislature by reference to the common understanding of "public body" is not only unnecessary, it also begs the question. Notwithstanding the everyday meaning of "public body," this term was expressly defined by our legislature for purposes of the Whistleblower Law. "Where a statute provides internal definitions, we are bound to construe the statute according to those definitions." Hodges v. Rodriguez, 435 Pa.Super. 360, 645 A.2d 1340, 1348 (1994) (citing 1 Pa. C.S.A. § 1903(a)).
The statute plainly and unequivocally makes any body "funded in any amount by or through Commonwealth ... authority" a public body for purposes of the Whistleblower Law. 43 P.S. § 1422. Where the language of a statute is unambiguous on its face, we are bound to give effect to that language.
Id. at 500.
¶ 15 The plain meaning of the language of the statute makes it clear that it was intended to apply to all agencies that receive public monies under the administration of the Commonwealth. We do not find that legislatively appropriated funds are the only monies that will create "public body" status under the Whistleblower Law. The statutory language differentiates between appropriated and "pass-through" funds and extends the law to cover both types: "[a]ny other body which is ... funded in any amount by or through Commonwealth...." 43 P.S. § 1422 (emphasis added). The Law clearly indicates that it is intended to be applied to bodies that receive not only money appropriated by the Commonwealth, but also public money that passes through the Commonwealth.
¶ 16 We find, therefore, that a recipient of Medicaid funding is a "public body" for purposes of the Whistleblower Law. Because appellant alleges that she was discharged for making good-faith reports of wrongdoing and waste, she states *577 a valid cause of action, and her complaint on this count was erroneously dismissed.
¶ 17 Appellant's claim for "civil conspiracy" is related to the Whistleblower Law violations and was thus properly dismissed as being repetitive of the former cause of action.
¶ 18 Turning next to appellant's claim for wrongful discharge, we find again that she has stated a valid cause of action. While it is true that Pennsylvania embraces the "at will" employment doctrine, our Supreme Court has recognized an exception where an employee is discharged in violation of public policy. Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174 (1974). An en banc panel of this Court subsequently determined that the public policy exception may be applied under narrowly limited circumstances where (1) an employer requires an employee to commit a crime, (2) an employer prevents an employee from complying with a statutory duty, or (3) a statute prohibits discharge. Shick v. Shirey, 456 Pa.Super. 668, 691 A.2d 511, 513 (1997).
¶ 19 Here, we have a statute that clearly prohibits dischargethe afore-discussed Whistleblower Law.[2] This law represents our Commonwealth's public policy, as clearly enunciated by the legislature, that persons who report waste or wrongdoing regarding public funds should not be penalized by losing their jobs. Appellant's discharge violated this directive; thus, the third scenario set forth under Shick has been met.
¶ 20 Our Court has previously considered the public policy exception to at-will employment arising under the Whistleblower Law. In Krajsa v. Keypunch, Inc., 424 Pa.Super. 230, 622 A.2d 355 (1993), the appellant was discharged after reporting overcharges made by his employer under terms of a government contract for services. We rejected appellant's argument that his discharge was prohibited under the Whistleblower Law and thus wrongful, but only because we found him to be an employee of a private employer, not a public employer. This is the distinction that we now consider. Here, we have determined that appellant was protected from retaliation or discharge expressly because appellees met the statutory definition of a public employer. It was, ergo, a violation of the mandated public policy as set forth in the statute for appellees to fire her from her job for the reason alleged.
¶ 21 Regarding appellant's complaint of intentional infliction of emotional distress, we find the trial court properly relied on Hunger v. Grand Central Sanitation, 447 Pa.Super. 575, 670 A.2d 173 (1996), for the proposition that a claim for Intentional Infliction of Emotional Distress will stand only when the complained of behavior is so extreme as to go beyond all bounds of decency. Id. at 177. The trial court, however, seemingly failed to consider some of the allegations appellant made in her first amended complaint. For instance, at paragraphs 54 and 55, appellant averred that an employee of appellees threatened her with physical violence because of her "whistleblower" activities and conveyed a veiled threat of homicide; this employee was later discovered during a police raid on the facility to have a firearm in his possession. Although appellant fails to specifically so state, it can be reasonably inferred from the allegations that this threatening employee may have acted on behalf of appellees or their immediate agent, Ms. Minninger. An allegation of death threats condoned by an employer in retaliation for "ratting" is, if proven at trial, undoubtedly the kind that would qualify as "outrageous" in the mind of the average member of the community. Id. *578 Appellant also averred that, because of this and other actions, she suffered severe "medical manifestations," prompting her to file an incident report or work-related illness with appellees and to seek medical attention which resulted in her being prescribed Xanax for depression. We believe that these facts, if proven, would be sufficient to prevail on a claim of Intentional Infliction of Emotional Distress. The trial court thus erred in dismissing the count as a matter of law.
¶ 22 The same cannot be said for appellant's count alleging negligent infliction of emotional distress. The crux of a negligent infliction of emotional distress claim is that appellees breached some duty they owed to appellant and that that breach injured her. Although appellant alleges that appellees "had a duty of care to protect [appellant] from emotional distress," Complaint, ¶ 150, we are unaware of any authority establishing the existence of this duty between an employer and employee. With no articulable duty established, we are reluctant to extend a cause for negligent infliction of emotional distress to the instant action.
¶ 23 Next we address appellant's claim that appellees violated provisions of the Wage Payment and Collection Law by failing to pay her the two weeks' severance pay as set forth in the Genesis Employees Handbook. Appellant points to specific language in the handbook that indicates that two weeks' notice or two weeks' pay will be paid to an employee terminated for "other than cause." Appellees argue, on the other hand, that a disclaimer in the handbook disavows any contractual obligation on their part to follow through with the benefits it extended. Our case law dictates we adopt appellant's position.
¶ 24 In McLaughlin v. Gastrointestinal Specialists, Inc., 696 A.2d 173 (Pa.Super.1997) petition for appeal granted 554 Pa. 274, 721 A.2d 56 (1998)[3], an at-will employee was terminated for complaining to her employer about hazardous materials stored on-site in violation of OSHA standards. Although we determined that she failed to establish a valid claim for wrongful discharge, she had stated a valid claim under the Wage Payment and Collection Law. In so deciding, we held that the two weeks' severance pay promised to her upon her separation was a "fringe benefit[ ] or wage supplement[ ] such as separation pay to be paid pursuant to an agreement to the employee." Id. at 176. We can discern no significant difference between the unilateral promise of two weeks' severance pay given to McLaughlin and the unilateral promise of two weeks' severance pay given to appellant here. Appellant was thus justified in expecting her claim to be heard on its merits.
¶ 25 Finally, we dismiss appellant's complaint that the trial judge should have recused himself. A party seeking recusal of a judge must provide evidence of the necessity for a disqualification. Commonwealth v. Perry, 468 Pa. 515, 364 A.2d 312, 318 (1976). Generally, recusal is warranted where the appearance of impropriety arises because of a judge's pecuniary interest in a controversy or because of a consanguineal relationship between the judge and one of the litigants. Id. at 317. The crux of appellant's complaint is that the lower court judge continually refused to "make proper determinations of fact or law in this matter." This, in itself, is insufficient grounds on which to show impropriety. Appellant additionally complains that "ex parte communications" have biased the judge against her. Again, appellant has shown no link between the alleged communications and any bias. Appellant has therefore failed to show by any credible evidence impropriety on the part of the trial judge.
*579 ¶ 26 In conclusion, we hold that the trial court erred in dismissing appellant's case. We also find that she has stated valid prima facie causes of action for wrongful discharge, violations of the Whistleblower Law, violations of the Wage Payment and Collection Law, and intentional infliction of emotional distress. All of appellant's other causes of action were properly dismissed.
27 Order vacated; case remanded for further proceedings pursuant to this opinion. Jurisdiction relinquished.
¶ 28 McEWEN, President Judge, filed a concurring and dissenting statement.
McEWEN, President Judge, concurring and dissenting:
¶ 1 While the author of the majority view provides, in his usual fashion, a sound rationale and persuasive expression of view, I am unable to find that appellees, privately owned, for-profit business entities, are "public bodies" for purposes of the Whistleblower Law[4], 43 P.S. §§ 1421-1428. Nonetheless, I agree with the majority that the order which dismissed the amended complaint of appellant must be vacated and the case remanded for trial[5], as I believe appellant has pleaded a viable cause of action for wrongful discharge and civil conspiracy.
¶ 2 Pennsylvania is a fact-pleading jurisdiction "under which courts are presumed to know the law and plaintiffs need only plead facts constituting the cause of action and the courts will take judicial notice of the statute involved." Heinly v. Commonwealth, 153 Pa.Cmwlth. 599, 621 A.2d 1212, 1215 n. 5 (1993). I believe the facts alleged by appellant set forth causes of action for civil conspiracy and wrongful discharge in violation of the Medicare and Medicaid Fraud Act, 42 U.S.C. § 1320(a)-7(b). As recently noted by our learned colleague, Judge Berle M. Schiller, in his compelling dissenting opinion in Spierling v. First American Home Health Services, Inc., 1999 Pa.Super. 222, 737 A.2d 1250 (Pa.Super.1999),
... today's society has a compelling interest in preventing the significant waste of taxpayer funds through fraudulent billing practices by health care providers. We must ensure the availability of federally funded health care insurance for the poor, disabled, and the elderly.
Employees should not be sacrificed on the altar of the employee at-will doctrine for reporting suspected Medicare fraud through proper channels in the court of their employment....
The observation that "the employer has the hammer", Householder v. Kensington Mfg. Co., 360 Pa.Super. 290, 520 A.2d 461, 464 (1987), allo. denied, 516 Pa. 629, 532 A.2d 1137 (1987), is as timeless as that hammer is impervious. As a result, it falls to the courts to impose a rein on the unbridled swing of that hammer. Thus it is that the case must be remanded for trial of the cause of appellant.
NOTES
[1] In addition to appellant's pro se brief and appellees' counseled brief, we have received an amicus curiae brief submitted by the Service Employees International Union on behalf of appellant.
[2] We recently addressed a similar situation in Spierling v. First American Home Services, Inc., 737 A.2d 1250 (Pa.Super.1999). These cases are different, however, in that Ms. Denton's claim is based on the Whistleblower Law, while Ms. Spierling's claim was based solely on the public policy exception to the at will employment doctrine. See id. The difference in claims has led to the difference in result.
[3] It appears that the petition for appeal was granted to consider issues other than the WPCL determination.
[4] Act of Dec. 12, 1986, P.L. 1559, No. 169, § 1.
[5] I would also permit appellant to file a second amended complaint upon remand.